ALBANY COUNTY.—HON. FRANCIS H. WOODS, SURROGATE.—October, 1886.

SMITH *v.* BUCHANAN.

*In the matter of the judicial settlement of the account of* CHARLES J. BUCHANAN, GEORGE M. WRIGHT *and* CHARLES McLAREN, *as executors of the will of* HENRY SMITH, *deceased.*

Proceeds of the sale of a decedent's real property, made by the executors pursuant to valid directions contained in the will, are to be reckoned as part of the personal estate, for the purpose of an allowance of commissions under Code Civ. Pro., § 2736, according to which, where the personal estate of a decedent amounts to $100,000, or over, above all debts, three full commissions are distributable among three or more executors, according to the services rendered by them, respectively.

The statute enlarging the commissions of executors, etc., in case of the estates described, was based upon the theory that such an estate could

afford to suitably reward a faithful trustee for its administration, and that the rate previously allowed was too small to compensate him for the labor and responsibility involved.

Testator died, leaving an estate, which comprised both real and personal property, amounting to more than $100,000, over all his debts, and a will appointing three executors, who qualified and acted, and to whom the residue, after certain specific dispositions, was given in trust to convert into money, hold and invest sufficient of the proceeds to provide for the payment of annuities, and ultimately to divide the entire principal among testator's children. The right to three full commissions, claimed by the executors upon their accounting, had after the death of the annuitants, depended upon whether the proceeds of realty disposed of by the former were to be considered, for this purpose, personal estate. Most of the parcels of such property had been conveyed, at agreed valuations, to the children, by the executors, who took receipts for the purchase price, and applied the amounts upon the distributive shares of the grantees.—

*Held*, that, under the will, the real property was to be converted into personalty, and distributed to the children as such ; and that the executors were entitled to three full commissions, to be awarded in proportions which appeared to have been fairly earned.

DECEDENT died December 1st, 1884. By the first clause of his will, executed June 19th, 1882, he gave his homestead at Cobleskill to his wife, in lieu of dower, during her widowhood, and thereafter to his son Henry, and also gave, in the same way, the library furniture and property therein, with right to the wife to use up all household stores. By the second clause, he gave to his mother during life the use of a house and lot in Cobleskill where she resided. The 3rd and the 6th clauses of the will were as follows :

" Third. To Charles McLaren, George M. Wright and Charles J. Buchanan *all the rest of my property in trust* for the following uses and with the following regulations : First. They shall not be required to give bail or make an inventory. They shall *manage and improve* the property *and let or sell it* as they think

best *so as to turn the same into money.* They may compromise any matters as they think best *so as to convert all into money as soon as can be to advantage* and *pay over the proceeds,* keeping it well invested in the meantime, as fast as they can do it in view of the payments to be made. They must *pay my mother,* —— dollars a week during her life and my wife, —— dollars a week during her widowhood, and from that time, as the state of their funds on hand will allow it, *to pay the balance to my children in equal parts."*

"Sixth. When my wife and mother are dead, the fund required to be kept invested shall be turned into money or in kind be divided equally amongst all my children, and before that time any income that may not be needed to pay the sums I have mentioned, or to be invested to bring an income to pay such sums shall from time to time, as the same may accumulate to warrant it, be paid in equal parts to such children, but not more than ten dollars a week shall be paid to such children each until my son shall have attained the age of twenty-one years."

The son, Henry, was twenty-one years of age at his father's death. At the time of his death, testator had, as appeared by the executors' account, $71,942.25 of personal property. Besides the "homestead" in Cobleskill, he also owned thirteen parcels of real estate, three in the city of Albany, nine in Schoharie county and one, the formal title to which he held subject to a defeasance. From this last parcel there was realized on a sale thereof, by consent of the grantor, $6,200. The other parcels of real estate had, when the executors filed their account, with the exception

of a house and lot in the city of Albany, been sold and conveyed by the executors for $49,087.94.

Most of these parcels were sold and conveyed, after considerable negotiations, to the three children of Mr. Smith, the executors taking from the purchasers receipts for the purchase price to apply upon his or her share in the estate of the father. The proceeds of the real and personal estate, at the time the account was filed, amounted to $127,230.19—making over one hundred thousand dollars over all his debts. The only question raised was as to the commissions of the executors and the costs and expenses of the accounting.

The widow, and the mother, of decedent had died before the filing of the executors' account.

NATHANIEL C. MOAK, *for executors.*

GEORGE M. WRIGHT, *and* CHARLES J. BUCHANAN, *executors in person.*

J. SHEPARD SMITH, *for himself, as devisee and legatee of Fanny S. Rich.*

NORTON CHASE, *for Henry Smith.*

KATE S. PIERSON, *a daughter, and* DEWITT C. DOW, *as executor of Fanny S. Rich a deceased daughter, in person.*

THE SURROGATE.—The executors claim that, under § 2736 of the Code of Civil Procedure, they are entitled to three full commissions, to be apportioned among them according to the services rendered by them respectively, and, under § 2562, to their counsel fees and other expenses for settlement of the estate. Their right to three full commissions is challenged by J. Shepard Smith, a devisee and legatee of Fanny S. Rich a daughter of Mr. Smith, who died subsequently to her father.

The right to the three full commissions claimed depends upon whether the proceeds of the real estate, accounted for with the proceeds of the personalty, are to be considered and treated, on this accounting, as personal estate.   The sales and conveyances of real estate to the children, the acceptance of the purchase price and receipting therefor as a portion of their share of the estate of the father was, in legal effect and in substance, a sale and conveyance of such real estate, and the same as if the purchaser had paid to the executors the purchase money and the executors had immediately repaid it as so much on the portion of the purchaser (Pratt v. Foote, 9 *N. Y.*, 463, 468 ; 10 *N. Y.*, 601 ; Beach v. Smith, 30 *N. Y.*, 131 ; Wright v. Nostrand, 24 *N. Y. Week. Dig.*, 418).

I am of opinion that, under the will of the testator, the real estate was to be converted into personalty and distributed to his children as such.   The executors were vested with the legal  title thereto; they were directed to sell it and " turn the same into money."   They were to compromise claims, etc., " so as to *convert* all into money as soon as can be to advantage and pay over the *proceeds,* keeping it well invested in the meantime, as fast as they can do it in view of the payments to be made."   After payments to the widow and mother they are " to pay the *balance* to my children in equal parts."   By the sixth clause, what is not needed for investment to pay the annuities to the widow and mother is " from time to time as the same may accumulate to warrant it to be paid in equal parts to such children."

Under  these  provisions, and  the  authorities  as· I

understand them, this was a conversion of the realty into personalty. Such conversion was, in fact and in law, made by the executors, and the proceeds of the sales divided as personalty (Lent v. Howard, 89 *N. Y.*, 172; Martin v. Sherman, 2 *Sandf. Ch.*, 341; Power v. Cassidy, 79 *N. Y.*, 602; Matter of Mahan, 32 *Hun*, 73, affi'd, 98 *N. Y.*, 372; Flanagan v. Flanagan, 8 *Abb. N. C.*, 413; Hatch v. Bassett, 52 *N. Y.*, 359; Dodge v. Pond, 23 *N. Y.*, 69, 71; Fisher v. Banta, 66 *N. Y.*, 468; Hood v. Hood, 85 *N. Y.*, 561; Bogert v. Hestell, 4 *Hill*, 492.); it is to be considered as personalty from the time of the testator's death (Lent v. Howard, *supra*; Roberts v. Corning, 89 *N. Y.*, 226; Fisher v. Banta, 68 *N. Y.*, 468; Stagg v. Jackson, 1 *N. Y.*, 206; Fish v. Coster 15 *N. Y. Week. Dig.*, 482; Kain v. Gott, 24 *Wend.*, 659).

The legal title was in fact vested in the executors and trustees (Morse v. Morse, 85 *N. Y.*, 53; Tobias v. Ketchum, 32 *N. Y.*, 319; Leggett v. Perkins, 2 *N. Y.*, 297; Vernon v. Vernon, 53 *N. Y.*, 358; Brewster v. Striker, 2 *N. Y.*, 19).

The power of sale, conferred on the trustees was absolute and imperative, without discretion except as to the time and manner of performing the duty imposed. It was, therefore, a valid express trust (Cook v. Platt, 98 *N. Y.*, 38), and the power to lease carried with it and included the power to receive the rents accruing from its execution (Morse v. Morse, 85 *N. Y.*, 59).

Even if the real estate were sold under a naked power, the executors and trustees were still bound to consider the real estate as personalty and account for

the personalty as such. In Lent v. Howard (89 *N.*
*Y.*, 177, *supra*), there was no devise to the executors
(see will, page 172) and the executors acted under a
simple power of sale. The rents and proceeds of real
estate were held to be personal property in their
hands and they were held accountable therefor. See,
also, Marsh v. Wheeler (2 *Edw. Ch.*, 157); Bunce v.
Vandergrift (3 *Paige*, 37); Stagg v. Jackson (1 *N.
Y.*, 206); Hood v. Hood (85 *N. Y.*, 561); Code Civ.
Pro., § 2724, subd. 4.

The real estate having come into the hands of the
trustees, having been treated in all respects as per-
sonalty and accepted by the parties in interest as such,
it seems clear to me it should be so considered for all
purposes including the estimation of the commissions
of the trustees.

In Cox v. Schemerhorn (18 *Hun*, 16), the Supreme
court, in the second Department, held that, where an
executor sold real estate subject to mortgages, he
was entitled to commissions on the whole purchase
price, including the amount secured to be paid by the
mortgages, and is not limited to commissions on what
remains after deducting the amount of the mortgages
therefrom. It is not necessary here to consider wheth-
er so much of this case as holds the executor entitled
to commissions on sums which the purchaser never
pays and he never receives or disburses, and as to
which he never has any authority, is sound or not.
The case is clearly an authority that he is entitled
to commissions on what the purchaser pays, and the
executor receives and disburses. In Baucus v. Stover
(24 *Hun*, 109), it was held, in this Department, more

in accordance with my views of the law where an ex-
ecutor sells subject to a mortgage, and neither re-
ceives nor pays anything by reason thereof, that,
where an executor under a power in the will author-
izing a sale for the division of the proceeds, sells real
estate subject to mortgages existing thereon, at the
time of the testator's death, or sells the real estate free
from the incumbrance, paying off such incumbrance
from the proceeds of sale, he is only entitled to com-
missions upon the amounts actually received for the
equity of redemption, and cannot charge them also
upon the amount of the property sold (see opinion of
BOCKES, J., page 114; LEARNED, J., page 115). It is
true this case was reversed by the Court of Appeals
(89 *N. Y.*, 1), but on an entirely different point, leav-
ing this point under consideration untouched as an
adjudication.

In the Matter of Leggett (4 *Redf.*, 148), CALVIN,
Surrogate, said (p. 150): " It seems to me to be a too
narrow construction to hold that section 71, above
cited, confines the allowance of full commissions to
three executors and trustees to such estates as reach
$100,000, over and above debts, in personalty. If
commissions are to be allowed as a compensation for
services rendered an estate by executors or trustees,
whether for the receipt and disbursement of personal
assets or the collection of rents and sale of lands,
there seems to be no good reason why less should be
paid for the latter than the former, as it may very
often occur that the performance of the latter is much
more laborious and troublesome. Obviously, the stat-
ute enlarging the commissions of executors in certain

cases was based upon the idea that commissions on an estate of $100,000 under the former statute, were too small for the labor and responsibility of its administration, and that such an estate could afford to suitably reward a faithful trustee for its administration.

" The provision that it shall amount to that sum, over and above all debts, points directly to this latter reason.     That such a statute should not be strictly and literally construed, so as to unreasonably circumscribe its effect, is declared to be the rule in Mann v. Lawrence (3 *Bradf.*, 425); Wagstaff v. Lowerie (23 *Barb.*, 207); Matter of De Peyster (4 *Sandf. Ch.*, 511).     These cases hold that trustees are entitled to commissions upon real estate held in trust.     I am of opinion that a reasonable construction of the statute in question entitles the executors and trustees to three full commissions."

In Savage v. Sherman (24 *Hun*, 307), it was held that " trustees appointed prior to the passage of chapter 362 of the Laws of 1863, giving not to exceed three commissions to executors when the personal estate amounts to not less than $100,000, are within the equity of that statute, and are entitled upon an accounting, had subsequent to the passage thereof, to the commissions given by it when the value of the estate vested in them, whether it consists of real or personal estate, or both, amounts to the sum therein named."     The decision of this case on appeal (87 *N. Y.*, 277, 287) did not question this portion of the decision of the Supreme court, but on the contrary affirmed it.

In Phoenix v. Livingston (101 *N. Y.*, 451), the fee

of the lands vested in the beneficiaries but the executors, under a power of sale, sold considerable real estate. RAPALLO, J., said (page 457): "Upon all sums of money thus realized and passing through their hands, they were entitled to commissions; but the unsold lands, at the close of the trust, passed to the possession of the remaindermen, not through any title derived from the trustees, but by force of the original devise." See, also, Ward v. Ford (4 *Redf.*, 47); Matter of Rosevelt (24 *Hun*, 325).

The testator himself had it in his power to determine whether his lands should be personal estate, whether the entire burden of their care and management should be thrown upon his executors, whether they should be compelled to account for the proceeds, and whether these should be distributed as money among his beneficiaries. If he so chose, it was legally personal estate from the time of his death, certainly in fact from the sale and conversion into money.

Having reached a conclusion that the executors and trustees should be allowed three full commissions, it only remains to consider how they should be "apportioned among them according to the services rendered by them respectively." Under this provision each should be awarded the proportion thereof which the evidence shows he fairly earned (Matter of Harris, 4 *Dem.*, 463, 466; Hill v. Nelson, 1 *id.*, 357, 362). This cannot, of course, be ascertained to a mathematical certainty. The evidence shows that Mr. Buchanan was a lawyer residing at Albany, Mr. Wright a lawyer residing in New York, and Mr. McLaren a merchant residing in Brooklyn, doing business in

New York; that Mr. Buchanan prepared all the papers and vouchers relative to the estate, including the deeds of the real estate; that he conducted the negotiations for the sale thereof, and had the principal charge of such sales; that he prepared the inventories, and, in several important matters, conducted the negotiations for settlement; that Mr. Wright was frequently at Albany and Schoharie, relative to the business of the estate, and Mr. McLaren but a few times. It is evident from the situation of the estate, and of Mr. Buchanan's proximity of residence thereto, that the burden of the labors fell upon him. Upon the whole, I think that three twelfths of the commissions should be awarded to Mr. McLaren, four twelfths to Mr. Wright and five twelfths to Mr. Buchanan. The latter may not thus get a mathematical proportion, according to his services and responsibility, but it approximates justice as near as I can.