## *In re* TURFLER'S ESTATE.

(*Surrogate's Court, Rockland County, Filed May* 16, 1892.)

1. WILL—CONSTRUCTION.

A testator gave to his wife the income of all his property, both real and personal, "as long as she lives, for her benefit and support," but out of the income she was to pay all necessary repairs upon the buildings, and all taxes, etc. The only authority the executors were to exercise during the wife's life was to pay debts and funeral expenses. After her death they were directed to sell the property, and pay the legacies enumerated in the will. Testator also directed that his two sons should not come into possession of their property until after his wife's death, unless she consented thereto in writing. *Held*, that the widow took a life estate under the will, and no title to testator's property or control thereof during the wife's life was given to the executors except to pay his debts and funeral expenses.

2. EXECUTORS' ACCOUNTING—COMMISSIONS.

In such case the executors were not entitled to include in their account the income of the estate collected by them during the widow's life under an arrangement with her, nor the disbursements thereout for taxes during her life, nor commissions on such collection.

4. SAME.

The compensation for such collection was a matter to be adjusted between the executor, as an individual, and the personal representative of the widow.

4. SAME.

The persons interested in the estate agreed in writing with the executors that the real estate should not be sold; that for the purpose of fixing the executors' compensation the same should be treated as of a certain value; and that the executors would accept a certain agreed compensation. *Held*, that although the real estate was not sold, the beneficiaries and executor were mutually estopped, under this agreement—the former from depriving the executor of his commissions thereunder, and the latter from claiming more than the agreed compensation, which was less than the statutory allowance.

5. SAME.

An executor's commissions should not be included in his account. Commissions are allowed only by order of the Court, and on settlement of the account.

6. Compensation to bookkeeper—Adjustment.

    Under the circumstances of this estate, a credit of $950 for the services of a bookkeeper was proper, but the same should be adjusted between the income estate of the widow and the estate held by the executors.

7. Same.

    An item of $100 for the services of a bookkeeper in preparing the executors' account should be excluded from the account and be disposed of upon the taxation of the costs of accounting.

Settlement of the accounts of Jacob C. Turfler and George F. Turfler, executors of the will of George C. Turfler, deceased.

Scott & Upson, for executors; T. C. Cronin and I. Newton Williams, for contestants.

Weiant, S.—The testator, George C. Turfler, died, leaving a last will and testament which was admitted to probate in this court, and letters testamentary granted thereon to Jacob C. Turfler and George F. Turfler, the accounting parties herein, on or about May 17, 1875. This last will and testament contained the following provisions:

"First. My will is that my executors hereinafter named shall pay all my just and lawful debts, including funeral expenses and physicians' bills, as soon after my death as is practicable. Second. I give unto my beloved wire, Elizabeth, the income of all my property, both real and personal, as long as she lives, for her benefit and support; but out of the above income my wife, Elizabeth, must pay all necessary repairs upon the buildings, and all taxes, such as Croton, government, State, county and city, besides insurance, etc.; and after the death of my said wife, Elizabeth, my will is that all the property of which I die possessed or seized (except as hereinafter stated) shall be divided amongst my children and legatees as follows, viz.: * * * Third. My will further is that my executors hereinafter named shall pay unto the following named persons the legacies I herein bequeath within one year after the death of my beloved wife, Elizabeth,

unto," etc. Here follow the names of several legatees to whom specific sums are bequeathed, and then the testator further disposes of his estate in these words: "My will further is that my executors hereinafter named shall sell all my property, both real and personal (except such property as I hereinafter bequeath unto my two sons Francis A. Turfler and Jacob C. Turfler), and upon the sale of any of my real estate I do hereby authorize my executors to give good and sufficient deed or deeds to the purchaser or purchasers thereof for the conveyance thereof. * * * The sale of the above property shall not take place until after the death of my wife, Elizabeth, and within two years thereafter." Then follow certain devises and provisions in relation to the testator's three sons, and the testator then adds: "My will is, and I wish to be understood, that my sons Francis A. Turfler and Jacob C. Turfler shall not come into possession of their property until after the death of my wife, Elizabeth, unless she consents thereto in writing." "Eighth. After paying the legacies above described, my will further is that my executors pay all my just debts, and after that to dispose of the balance as follows." Provisions making absolute disposition of such balance of the testator's estate, and appointing the accounting parties herein executors of his will, then follow.

These executors caused an inventory of the personal estate of the testator to be made and filed August 2, 1875, showing an aggregate of personal assets of $42,006.16. From the accounts filed herein, and the summary statement thereof, it appears that the executors have charged themselves as having received the aggregate sum or amount of $166,569.20, and credited themselves as having paid out the sum of $161,181.83, leaving a balance in their hands of $2,115.40. Of the moneys or properties so charged to themselves as receipts, between $110,000 and $112,000 appear to have been rentals of the real estate devised by the testator, and some $5,000 to $8,000 as income from other properties and sources. Of the sum of $161,181.83 the amount of $1,962.20 appears to have been paid for burial expenses and

a monument for the testator's grave, the sum of $407.79 for his debts, while about $72,000 was paid to the widow as income, about $9,000 for repairs of buildings, about $25,500 for taxes, about $1,300 for insurance, for commissions to agents for caring for and renting of houses about $900, and for services of a bookkeeper $950. The contestant objects to the allowance of the $950 for compensation to the bookkeeper, and the further sum of $100 for the same purpose; to the item of $1,250 for services of attorney and counsel not heretofore paid; and to the items aggregating $1,455, retained as commissions by the executors; and insists that the accounts of the executors, so far as the same relate to or include the receipt and disbursement of moneys received by them for the rents of the real estate and for the payments made in respect thereto, that the same should form no part of their account as executors; that no commissions are therefore legally allowable thereon; and that no part of the expenses of managing the estate during the widow's lifetime is allowable on this accounting.

Thus the main question submitted for determination is whether or not the will devolved upon these executors the administration of the testator's estate during the lifetime of the testator's widow. After careful consideration, I have reached the conclusion that it was the intention of the testator to give his widow a life interest or estate in his property, and to vest her with the possession and control thereof, and during her lifetime to give no title thereto or control thereof to his executors, except for the payment of his debts and burial expenses. The intention of the testator is controlling where he contravenes no rule of law, and to give effect to such intention is the primary rule of construction applied by courts in construing wills. Redf. Law & Pr. Sur. Cts. 251. The testator, as we have seen, gives to his widow "the income" of all his property, "both real and personal, as long as she lives, for her benefit and support." As he gives to no one else any authority or control over his estate, not even his executors, by any provision of the will, I think the necessary implication arises that his widow, who was to receive

the benefits accruing therefrom for her lifetime, must have been regarded by him as the one who should have the custody and control of such property, in order that such income could be realized and received. But there are other provisions or the will that indicate that the widow, and not the executors, was to be the manager and possessor of the testator's property during her lifetime. He adds to the bequest and devise of "the income" to her these words: "But out of the income my wife, Elizabeth, must pay all necessary repairs upon the buildings, and all taxes, besides insurance." The obligation to make these payments put upon her necessarily implies that upon her is devolved the duty of also caring for and managing the properties. And clearly these specific provisions as to his widow's right to receive the income, and the duty to maintain the property in due condition, and save it from the ordinary burdens which a life tenant usually discharges, in the absence of any authority, power, or trust in words conferred upon the executors, indicate that the executors, as such, were in no wise to act in that behalf during the widow's lifetime. Even the power of sale conferred upon the executors is in specific language restricted and prohibited until after the death of the widow. It thus appears that the testator intended that even this limited power given his executors should not be exercised during his widow's lifetime, confirming the view that it was the testator's purpose to make her the virtual owner, controller, and possessor of his property during her lifetime, free from the interference of the executors, or any of those who were made objects of his bounty, and postponing all their rights and the enjoyment of their estates until after her death.

A further circumstance indicating that the testator intended that his widow alone should have the benefits of his estate, and manage and possess the same, is furnished from the explicit language of his will, wherein he says:

"My will is, and I wish to be understood, that my sons Francis A. Turfler and Jacob C. Turfler shall not come into possession

of their property until after the death of my wife, Elizabeth, unless she consents thereto in writing."

The word "income," as used by the testator, clearly means all benefit and profit whatsoever coming from the property, whether from use or otherwise; and the necessary implication follows that the widow was given the right to use or occupy the same, or otherwise obtain income or profit or benefit therefrom. A gift to a widow of the rents and income of real estate for life creates an estate in the realty itself, and, if no duties are charged upon the executors with respect to their collection or application, no estate or trust is created in them in respect thereto. Macy v. Sawyer, 66 How. Pr. 381.   This is not a case like Marx v. McGlynn, 4 Redf. Sur. 455, cited by the counsel for the executors.   There the testator's will read: "It is my will that my executor pay A. B. all the income derived from my estate after paying the necessary expenses accruing thereon."   Nor is it similar to Betts v. Betts, 4 Abb. N. C. 317, where the testator directed that the income, rents, etc., be paid by his executors to a beneficiary.   Nor to Tobias v. Ketchum, 32 N. Y. 319, where the executors were clothed with full power to rent, lease, repair and insure.   In *Re* Blauvelt, 30 N. E. Rep. 194, the Court of Appeals recently decided that where a widow was given a life estate in the testator's property, and with a power of sale, the executrices, as such, were not entitled to receive the rents and income of the property; that they had no power over or right in the possession of the property in its original form or of the proceeds after the sale thereof, or to compel an accounting therefor; that the executrices, as such, had no interest in the matter, and that they were not accountable or responsible for the income or the principal estate during the widow's lifetime.   To entitle an executor to receive and hold property under the will of his testator and receive compensation for managing or administering the same, it must appear affirmatively from the instrument and the rules of law applicable to the construction of the same that such right or power is conferred upon him.   The only provision in this will that is to be given effect by the executors dur-

ing the lifetime of the widow is the one directing the payment of the funeral expenses and debts. Nothing appears that requires or empowers them to receive the rents and profits, or during such times imposes upon them any trust. "A devise of lands to executors, or other trustees, to be sold or mortgaged, where the trustees are not also empowered to receive the rents and profits, shall vest no estate in the trustees, but the trust shall be valid as a power, and the lands shall descend to the heirs, or pass to the devisees of the testator subject to the execution of the power. 1 Rev. St. p. 729, sec. 56. Thus it appears that the lands of this testator passed to his widow for her lifetime, and the title immediately became vested and remained in her until her death, and no one but her was entitled to the possession of the same, or could lawfully receive the rents or profits therefrom. Clift v. Moses, 116 N. Y. 144-152, 22 N. E. Rep. 393. "There does not appear to be any question but that an heir-at-law or a devisee under a will, where there is no charge upon the real estate, or where the real estate is not converted into personalty, is entitled, as against the personal representatives or creditors of the deceased, to receive and retain as his own the rents and profits arising from the realty until the same is sold for the payment of debts." Clift v. Moses, *supra,* and cases there cited.

The counsel for the executors urge that the evidence shows that the parties interested in the estate acquiesced in the executors receiving the rents and income of the estate, and the payment therefrom of the necessary sums to discharge the current expenses imposed upon the properties, and the balance thereof to the widow; and that thereby a practical construction was given to the will as imposing a trust upon the executors appertaining to the administration of the estate. Evidence was adduced tending to sustain that view, but it is insufficient to establish that proposition; and, in any event, I am of the opinion that on this accounting the provisions of the will and the rules of law applicable to the construction of the same preclude the consideration of a practical construction that is not borne out

from, and in accord with, its provisions. I doubt very much whether beneficiaries under a will can by their conduct place a construction upon a will and give to the same a different meaning from what its terms import and the law supplies, so as to make the same obligatory upon a court called upon to judicially administer the estate. Upon taking the testimony having relation to this question the court reserved the consideration of the accuracy of its rulings, and now determines that the same should stand as the same appear. The purpose of this testimony was to establish an arrangement between the executors and the widow, under which they, as executors, were to collect and disburse the income of the estate given her by the testator's will, and thus constitute the same an estate transaction, by virtue of which they should entitle themselves, as executors, to incur the usual expenditures in behalf of the estate, and to claim and receive the usual statutory commissions of executors. Practically, the rulings on these questions make little or no difference to those interested in this estate, for, if it be admitted that this income was received and disbursed by them as executors, then it follows that the income fund to which the widow alone was entitled must bear all the expenses of the administration of the same, as also the commissions of the executors, and not the principal estate. But the personal transactions and communications between the executor and the widow, sought to be elicited in his examination in his own behalf, and claimed not to fall within the restrictive provisions of section 829 of the Code, were to be put in as evidence to establish a claim of the executor for such expenditures and commissions against this estate of the testator. The questions, therefore, called for incompetent testimony as hearsay, if offered for the purpose of binding the estate of the testator; and as incompetent, under section 829 of the Code, if it were offered to bind the estate, or those interested in the same, of the widow, Elizabeth Turfler. The executor was testifying in his own behalf as against the contestant, a person claiming and having an interest in both estates. Pope v. Allen, 90 N. Y. 298. The construction that has thus been given to the

will of the testator, and which must be adopted and applied in the adjustment and settlement of the accounts of the executors herein, precludes from consideration as a part thereof all income from the estate property as a part of the estate with which the executors are chargeable, and which they were required to administer, and also all disbursements credited in the accounts as paid therefrom; and the decree herein to be entered should adjust the executors' accounts with all such receipts and payments excluded.

In the Matter of Brown, 5 Dem. Sur. 223, it was held that, where one who is executor of a will sells the testator's real property under a power conferred upon him by that instrument, personally, and not as executor, he should not include the proceeds of the sale in his official accounts; nor are the same chargeable with executorial commissions.   The matter of the compensation for the services of the executors in the management of the properties during the lifetime of the widow, the collections of the income, and the payments therefrom, it seems to me, constitute an individual transaction between the executor or executors performing such service and the widow, and is a matter to be adjusted between such executor or executors, as individuals, and the personal representative of the estate of the widow.   The power of attorney put in evidence as an exhibit shows that such management of the testator's property during the lifetime of the widow was a matter between her and the executor, Jacob C. Turfler, individually, and not as executor, and is a strong circumstance indicating that this income was not received and disbursed by him as executor.   The true basis for the compensation of the commissions of the executors is therefore the aggregate receipts and payments, excluding all income and disbursements therefrom, and to be computed at the statutory rates.   Phœnix v. Livingston, 101 N. Y. 451-456, 5 N. E. Rep. 70.   Of course, in speaking of excluding income and disbursements thereof, I have reference only to the income and payments therefrom from the death of the testator to the death of the widow.

There is, however, another question submitted for considera-

tion touching the compensation or commissions of the executors. They claim that they are entitled to commissions on the realty as if the same had been actually sold, and the proceeds distributed in accordance with the provisions of the will. The will, as we have seen, provides that after the death of the widow the executors shall sell all the testator's property, "real and personal, except," etc., "and to convert all stock, bonds, and other personal property into money, the same to be divided by my executors as follows: the sale of the property not to take place until after the death of the widow, and within two years thereafter." This direction is specific and mandatory upon the executors, and, when considered and construed in connection with the other items of the will providing for the distribution of the testator's estate in accordance with his intention, upon the death of the widow, the same became personalty in contemplation of law (Smith v. Buchanan, 5 Dem. Sur. 169, and cases there cited); and the executors would be entitled to commissions thereon in the event of a sale by them and a distribution of the proceeds (id.); but it seems not if the lands remained unsold (Phœnix v. Livingston, 101 N. Y. 451, 5 N. E. Rep. 70.) The lands not having been sold would, therefore, be decisive of the matter, were it not for the fact that by a certain instrument entered into on March 15, 1886, it was agreed by and between the contestant and all parties interested in the estate, for reasons therein set forth, that the real estate should not be sold in pursuance of the provisions of the testator's will, and that George F. Turfler, Jacob C. Turfler, the two executors, herein, and Francis A. Turfler, should thereafter manage said properties as trustees, and therein specifying the powers and prescribing their duties as such. It was provided by said agreement that the executors of the said George C. Turfler "may at any time after the said 1st day of June, 1886, submit their final accounts in the Surrogate's Court as such executors, and it shall be deemed a full and sufficient accounting on their part of and for all the said property herein referred to, and all income, rents and profits thereof, as of any time subsequent to the 1st day of

June, 1886, if they submit upon such final accounting this instrument." It was further thereby "agreed that the executors shall be, and they hereby are, except for the purpose of such final accounting, released, discharged, and wholly exonerated from any further duty or obligation of any kind respecting the said property from and after the said 1st day of June, 1886." "And for the purpose of fixing the statutory compensation of the said executors respecting the said property, it is further agreed that the said property may be valued upon such final accounting at the round sum of one hundred thousand dollars, and may, for the purposes of fixing such compensation, be taken in such accounting as if it were such sum in cash." Under the same date, and as a part of the above arrangement, the said executors executed an instrument whereby they agreed, as such executors, "to and with the heirs-at-law and devisees of said estate, to accept $1,000, or $500 to each, in full for all commissions as executors or trustees of said estate of G. C. Turfler which we may be entitled to, or coming to us and each of us, out of the real estate owned by George C. Turfler at the time of his demise, and situated in the city and county of New York; such sum, when paid, to be a full release of the heirs of said estate for the said real estate or the commissions we might have earned from the sale of same under said will." This arrangement seems clear and specific. It related solely to the real property, and left the remainder of the estate to be administered and disposed of by the executors in accordance with the terms of the will of the testator, and to account for the same, and to receive their commissions thereon in accordance with the usual practice, and at the rates prescribed by statute; and, so far as that portion of the estate is adjusted and settled upon this accounting, the executors' commissions must be computed and allowed accordingly.

A further question is presented, however, as to what, if any, commissions or compensation shall be awarded the executors for the disposition of the real estate. Had the executors carried out the provisions of the will by selling this real property and

distributing the proceeds thereof, it would have been entirely clear that they would have been entitled to their commissions thereon at the statutory rates. This has not been done. Pursuant to the above agreement, entered into, the real estate was not sold, and the executors do not account for the same, and have not, therefore, from a strictly legal standpoint, placed themselves in a position to claim their commissions thereon according to the usual practice and legal requirements. The executors claim, however, even admitting that to be so, that the agreement entered into entitles them to the compensation therein agreed upon. Its terms are clear and explicit in favor of their claim, and it would be a gross injustice to them to permit the parties thereto and interested in the estate to now repudiate the same, and send the parties out of court without compensation. It seems that a Surrogate's Court has power to prevent this injustice. Paxton v. Brogan, 10 N. Y. Supp. 563. It is binding upon the parties, and can this court give force and effect to the same? I shall so hold. The writings, having been acted upon, constitute an estoppel. They should not now, after the executors have relied and acted upon the same, and failed to sell the realty, and thus put themselves into the regular way to entitle themselves to demand their lawful commissions, be permitted to repudiate this agreement, and turn the executors away without compensation, upon a claim that the executors have not complied with the provisions of the will, and disposed of the proceeds of the sale thereof, so as, according to the usual practice and rules of law, to entitle them to demand their lawful commissions. Ledyard v. Bull, 119 N. Y. 62, 23 N. E. Rep. 444; Singleton v. Smith, 2 N. Y. St. Rep. 173. Again, it seems to me that the agreement may be regarded as one where an interested party has accepted specific articles or pieces of property in lieu of cash, in which instances the commissions are earned and allowable. McAlpine v. Potter, 126 N. Y. 291, 27 N. E. Rep. 475; Code Civil Pro. sec. 2744; Phœnix v. Livingston, 101 N. Y. 451-456, 5 N. E. Rep. 70. If it be objected that, in order that this may be done, it is essential that the accounting party

should set forth and state the property in his accounts, and credit himself with payment over of the same, as if the cash had been actually received and paid over, I will permit the executors to so amend and state their accounts accordingly. That seems to be the proper rule. *In re* Selleck, 111 N. Y. 234, 19 N. E. Rep. 66.

For the reasons above given for holding that the parties interested in the estate, and who entered into this agreement with the executors, are estopped from repudiating the same, I determine that the executors have waived and forfeited any further compensation than that fixed by such agreement, although it may be less than the statutory allowance would have been. *In re* Hopkins, 32 Hun, 618. The executors claim a full rate of compensation to each, on the ground that the personal estate of the testator exceeded $100,000, and contend that, for the purpose of fixing such valuation, the real estate must be regarded as personalty. When real estate is devised to executors in trust to use and distribute the proceeds, and such sale and distribution have been actually made, the proceeds thereof will be considered personal property; and if they bring up the estate to more than $100,000, then each executor will be entitled to the full commissions provided by Code Civil Pro., section 2736. Smith v. Buchanan, 5 Dem. Sur. 169. That seems to be a well-considered authority, and I am of the opinion that the rule there laid down is correct. That being so, each executor is entitled to full commissions on so much of the assets as exceed $100,000, unless he has lost such right by failure to convert the real estate by an actual sale. The agreement as to the commissions precludes the executors from more than they have stipulated for on the $100,-000 fixed as the value of the realty. Counsel may be heard further on this question on settlement of the decree.

The executors should restate their accounts so as to exclude the items therefrom retained for commissions. Commissions are allowed only by order of court, and on the settlement of the account. Those claiming them have no authority to appropri-

28

ate sums to their own use, as commissions, until they are judicially allowed. Freeman v. Freeman, 4 Redf. Sur. 211; Whitney v. Phoenix, id. 180; Wheelwright v. Wheelwright, 2 Redf. Sur. 501; Wheelwright v. Rhoades, 28 Hun, 57; Carroll v. Hughes, 5 Redf. Sur. 337; *In re* Butler's Estate (Surr.), 9 N. Y. Supp. 641; *In re* Willard's Estate, id. 555-557.

As to the amount of $950, claimed as a credit for the employment of a bookkeeper, I think the evidence is sufficient under the circumstances disclosed as to this estate and the administration thereof, to sustain the claim that it was proper and essential to employ a bookkeeper. There is no serious contention that the services were not worth the amount charged and paid. This entire amount, however, cannot be charged to the principal estate, nor allowed the executors on this accounting. The services of the bookkeeper were rendered for the benefit of the income estate of the widow as well as the estate held by the executors, and a portion thereof should be paid by her or her estate. This sum should be apportioned according to the extent and value of the services rendered for each estate, respectively, which may be done upon the settlement of the decree, at which time counsel may be heard thereon. The other item, of $100, sought to be charged for services of this bookkeeper, must be disposed of upon the taxation and adjustment of the costs of this proceeding, as such services were rendered in preparing the accounts rendered in this proceeding.

The stipulation entered into upon the hearing on April 8, 1892, disposes of the $1,250 item for counsel and attorney's charges, and the same may stand disposed of in accordance therewith.

Let a decree be presented for settlement and entry in accordance with the conclusions above set forth, costs to each party to be adjusted and inserted in the decree, payable out of the estate.