Cheshire,
March 5, 1907.

HOLBROOK, *Trustee*, v. HOLBROOK *& a.*

Where a corporation declares a special dividend out of its surplus earnings and gives its members the privilege of taking the same in cash or paying for an additional issue of shares therewith, the transaction is not a stock dividend, either in form or effect.

Where a will provides that the income of corporate stock shall be paid to a beneficiary during his life, the question whether a given dividend upon the shares is capital or income is to be determined by an inquiry as to its actual nature and source, in the absence of an express provision upon the subject in the trust instrument. In so far as a dividend represents surplus earnings which accrued after the trust went into effect, it is income and belongs to the life tenant, whether the distribution be made in cash, or stock, or subscription rights to new shares; but in so far as it represents earnings which accrued prior to the creation of the trust, or natural growth and increase in the value of the corporate plant and business, whenever the same may have taken place, it is capital and belongs to the *corpus* of the trust.

BILL IN EQUITY, by the trustee under the will of Susan J. Holbrook, praying for instructions as to the execution of the trust. Transferred from the October term, 1906, of the superior court by *Peaslee*, J.

*John E. Allen* and *Edward F. Cate* (of Massachusetts), for the life tenant.

*Charles H. Hersey*, for the remaindermen.

BINGHAM, J.   The petitioner is the trustee under a will and asks to be instructed as to the disposition to be made of certain trust funds.   By the fifteenth clause of the will, the testatrix provided that forty-six shares of the capital stock of the Keene National Bank and thirty shares of the Park National Bank should be held in trust, and that the trustee should pay the income thereof as it became due to the testatrix's nephew during his life.   The trustee was not to dispose of any of the stocks comprising the trust fund, nor make any new investment from the proceeds of stock sold, without the written consent of the life tenant.   It was further provided that in case any of the stocks were disposed of before the decease of the testatrix, an amount equal to the proceeds should be invested by the trustee, with the written consent of the life tenant, and placed with the remainder of the original trust fund.   Upon the termination of the life estate there was a provision disposing of the property to remaindermen. The testatrix died in 1900.   February 14, 1905, the directors of the Keene National Bank declared a special dividend of one hundred per cent, and on the same day its stockholders voted to double its capital stock, giving the stockholders the privilege of subscribing for the new stock at par and of paying for the same with the special dividend.   It was the purpose of the bank to increase its fixed capital and thus enable it to make larger loans.   All the stockholders, including the trustee, took the new stock.   It was found that the above transaction constituted a distribution of the surplus earnings of the bank, a part of which accumulated after the trust went into effect.

The remaindermen contend that the transaction was in substance a stock dividend, and that, notwithstanding the foregoing finding, the new stock is capital and not income; also, that the testatrix's will discloses that she intended the life tenant should receive as income only such earnings as were declared as ordinary dividends.   But we are of the opinion that their contention cannot be supported.   The votes of the corporation left the stockholders at liberty to take and retain the cash dividend, or to take the new stock and treat the dividend as payment for it; and where such is the case it cannot be said to be a stock dividend, either in form or effect.   *Davis* v. *Jackson,* 152 Mass. 58, 60. The testatrix made no distinction in her will between ordinary and extraordinary dividends in the distribution of the income.

Whatever was income of the trust fund she declared should be paid by the trustee to her nephew during his life, without regard to the form in which it was distributed. Nothing was said showing that she intended that any of it should go to the remaindermen. As the dividend that was declared was a cash dividend and issued out of surplus earnings, the material question is: What constituted the trust fund, the earnings of which, upon a distribution to stockholders, belonged to the life tenant as income?

In *Lord* v. *Brooks*, 52 N. H. 72, this was the very question before the court; and it was held that the surplus earnings of a corporation that were not divided at the date of the trust deed belonged to the *corpus* of the trust as a part of the capital of the trust fund, and that dividends declared out of surplus earnings that had accrued since the date of the trust deed were income for the life tenant. This result was reached by construing the trust deed and ascertaining the intention of the creator of the trust. The construction placed upon the deed in that case applies with equal force to the provisions of the will here under consideration. Moreover, the will furnishes additional evidence leading to the same conclusion, for it provides, in case of a sale of any of the stock before the testatrix's decease, that an amount equal to the " proceeds from said stocks " shall be invested " and placed with the remainder of the original trust fund." This provision clearly indicates that the testatrix intended that profits representing earnings made prior to the creation of the trust should be added to and form a part of the *corpus* of the trust.

While it is found that the bank's action constituted " a distribution of the surplus earnings of the bank, a part of which accumulated after the trust went into effect," it is not found what that part is. Upon a further hearing this fact may be ascertained. The trustee should then be directed to make such a division of the stocks or their proceeds as will give the life tenant such part of the stocks or proceeds as is equivalent to his interest in the surplus earnings that accrued subsequent to the creation of the trust. The balance should be added to the *corpus*. *Lord* v. *Brooks, supra; Peirce* v. *Burroughs*, 58 N. H. 302, 303.

We are also of the opinion that if the action on the part of the bank was a declaration of a stock and not of a cash dividend, our conclusion would not be different, in view of the finding that a part of the dividend came out of surplus earnings which accumulated after the trust went into effect. As we have seen, the method pursued by this court in determining whether a given dividend is capital or income, there being no express provision as to the matter in the trust instrument, is to inquire into the actual nature and source of the dividend. If it is found to represent

surplus earnings of the business that have accrued since the creation of the trust, it is to be regarded as income and as belonging to the life tenant. If it is found to represent earnings that accrued prior to the creation of the trust, it is capital and belongs to the *corpus* of the trust. *Lord* v. *Brooks, supra.* And if it is found, in whole or in part, to represent the natural growth and increase in the value of the corporate plant and business, whether that growth and increase took place before or after the trust was created, it is also to that extent capital. *Jones* v. *Railroad,* 67 N. H. 234, 241; *Van Blarcom* v. *Dager,* 31 N. J. Eq. 783, 794; *Hite's Devisees* v. *Hite's Ex'r,* 93 Ky. 257, 267. As the court in making the inquiry concerns itself with the substance of the transaction, and not the form in which the corporation has seen fit to clothe it, the fact that a dividend is distributed in cash or in stock is of little, if of any, importance in determining whether it is income or capital. The inquiry is largely one of fact, and the dividend is capital or income as the fact discloses into which of the above enumerated classes it falls. This is the logic of the decision in *Lord* v. *Brooks,* and is supported by the great weight of authority in this country. *McLouth* v. *Hunt,* 154 N. Y. 179; *Ashhurst* v. *Field's Adm'r,* 26 N. J. Eq. 1; *Earp's Appeal,* 28 Pa. St. 368; *Smith's Estate,* 140 Pa. St. 344; *Thomas* v. *Gregg,* 78 Md. 545; *Hite's Devisees* v. *Hite's Ex'r,* 93 Ky. 257, 264; *Pritchitt* v. *Trust Co.,* 96 Tenn. 472. If the decision in *Quinn* v. *Madigan,* 65 N. H. 8, so far as it relates to this question, cannot be supported on other grounds than those suggested in the opinion, it is conflict with *Lord* v. *Brooks* and with the decision in this case, and is overruled.

In 1903, the Park National Bank increased its capital stock one half, and gave its stockholders the right to subscribe, at $300 a share, for one share of new stock for every two shares of the old owned by them. The right to subscribe for a share of the new stock was worth upwards of $100, and surplus earnings to an amount greater than the value of all of the rights had accumulated since the creation of the trust and before 1903. The trustee subscribed for the fifteen shares of new stock to which the trust was entitled, took the certificate in his name as trustee, and borrowed the money to pay for the stock on a note signed by him as trustee. Three thousand dollars has been paid on the note out of the income belonging to the life tenant. This was done with the consent of the life tenant. The remaindermen contend that the rights to the new stock are capital and belong to the *corpus.*

It has been held in this state, in the absence of evidence showing the fact, that there is a presumption that the right to take new stock, if of value, is capital and belongs to the *corpus (Peirce*

v. *Burroughs*, 58 N. H. 302; *Law* v. *Alley*, 67 N. H. 93; *Walker*
v. *Walker*, 68 N. H. 407) ; also, that there is a presumption that
dividends made payable in cash are income (*Walker* v. *Walker*,
*supra*), and that stock dividends are presumptively capital. *Law*
v. *Alley*, *supra*. Whether there is any reason for invoking a pre-
sumption in any of these cases, other than one of convenience, we
need not inquire; for if there is a presumption that the right to
take new stock is capital and belongs to the *corpus*, it is of no
consequence in this case, since it is found that the rights in ques-
tion represent surplus earnings that have accrued since the trust
arose. By reason of this finding, it would seem that the presump-
tion was not only of no consequence in this case, but that the
value of the rights was not due to surplus earnings that accrued
prior to 1900, or to actual growth and increase in the value of the
corporate plant and business. If this interpretation of the case is
correct, it is difficult to see why the giving of the rights to stock-
holders should not be considered a distribution of income, the
same as the giving of stock is in the case of a stock dividend,
provided it is shown that the rights represent net earnings that
have accrued during the term of the life tenant. And when the
distribution is in the form of stock rights, the argument that it
may be difficult to ascertain whether they in fact represent income
or capital is of no greater weight than when the distribution is in
the form of a stock dividend. The object of the inquiry in each
case is to do justice by the parties and effectuate the intention of
the creator of the trust. If this interpretation of the case is incor-
rect, and upon a further hearing it should be made to appear that
some part of the value of the rights was due to surplus earnings
that accrued prior to the creation of the trust, or to natural growth
and increase in the value of the corporate plant and business, then
the trustee should be directed to make such disposition of the
stocks or their proceeds as will repay the life tenant for the sums
advanced by him in purchasing the stock and such further sum
as any value in the rights is due to surplus earnings that accrued
between 1900 and 1903, and the balance should be held by him as
a part of the *corpus*; otherwise, the trustee should be directed to
deliver the stock to the life tenant upon payment of the balance
due on the note.

We are aware that the conclusion reached on this branch of the
case is not in accord with the decisions in many jurisdictions.
*Atkins* v. *Albree*, 12 Allen 359; *Greene* v. *Smith*, 17 R. I. 28;
*Brinley* v. *Grou*, 50 Conn. 66; *In re Kernochan*, 104 N. Y. 618,
630; *Smith's Estate*, 140 Pa. St. 344; *Hite's Devisees* v. *Hite's
Ex'r*, 93 Ky. 257, 267; 2 Cook Corp. (2d ed.), s. 559. But the
principle involved in the equitable doctrine of looking at the sub-

stance rather than the form of the transaction is of general application, and logically includes within its scope the ascertainment of the rights of life tenant and remaindermen in corporate distributions when made in the form of stock rights, as when made in cash or stock.

In Pennsylvania, the courts have applied the equitable doctrine in determining the rights of life tenants and remaindermen in cash and stock dividends, but it would seem that they have failed to apply it in its integrity where subscription rights were involved. The decision in *Biddle's Appeal*, 99 Pa. St. 278, however, may be in harmony with the decision in this case; for although the subscription rights there in controversy were of value and represented surplus earnings, it was not shown that any of those earnings accrued between the date of the death of the testatrix and the granting of the subscription rights. In *Moss' Appeal*, 83 Pa. St. 264, the same finding was wanting, but the reasons advanced for holding the rights to be capital and not income were such as one would expect to find in jurisdictions where the courts look to the form and not the substance of the action of the corporation. The justice who delivered the opinion in that case seemed to think that the decision in *Earp's Appeal*, *supra*, proceeded upon the ground that the corporation recognized the transaction (the issuing of a stock dividend) as a "distribution of profits," and that that was the crucial distinction between that case and the one he was considering. But this is the argument of courts in jurisdictions that look to the form and not the substance of the act of the corporation. In *Wiltbank's Appeal*, 64 Pa. St. 256, it was held that the value of the rights was income. This decision proceeded upon the ground that if the value of the rights represented profits that accrued after the trust arose, the issuing of the rights was in substance a distribution of profits; and that, as the value of the old stock at the time the trust came into existence was not diminished by the issuing of the new stock, the rights necessarily represented profits and were income. But it seems to us that this decision overlooks one important feature, and that is that while the rights may represent profits since the trust arose, those profits are not necessarily surplus earnings, but may to some extent represent the natural growth and increase of the corporate plant, in which case, as we have seen, they would to that extent be principal and not income.

*Case discharged.*

All concurred.