Nor does the learned counsel for the defendant so contend. Undeniably, if the defendant had actually committed larceny, the fact that he or his brothers subsequently made restitution, on the discovery of the offense but before criminal proceedings, in no way purged the act of its criminal character, either before or since the enactment of this statutory provision. The only real dispute involved in this appeal arises from the question hereinbefore discussed, whether the defendant escaped criminality in his conduct by accompanying his willful, conscious, and deliberate violation of the statute with a secret intent, based upon hope or expectation, of making restitution some time thereafter, either before or after discovery of his offense.

If the existence of an intent to make subsequent restitution purged the defendant's acts of criminality, then the trial court erred in the theory on which it submitted the case to the jury. But, as we have said above, we do not deem the presence of such intention a legal defense available to the defendant under the indictment and proofs in this case. It must be admitted that there are many precedents, especially among early English cases, from which the appellant has sought support for his contention; but each of these cases must be considered in the light of its own facts. They are not susceptible of such generalization of rule as the appellant asserts. It is true enough that in many cases there are declarations that to constitute a criminal intent to commit common-law larceny and even statutory embezzlement there must have been an intent to deprive the true owner of his property "permanently." But this did not mean that a concurrent intent to make restitution some time or some how thereafter purged a deliberately unlawful taking and misappropriation of criminality. The defendant by misappropriating and diverting this check consumed it entirely. He could not thereafter restore it as property because it would have been then but a valueless piece of paper. His act deprived the owners of this check of their property "permanently" enough, and he was indicted for unlawful and intentional misapplication of the check itself.

We think the judgment of conviction should be affirmed. All concur.

---

### In re LEASK et al.

(Supreme Court, Appellate Division, First Department.　November 7, 1913.)

1. TRUSTS (§ 331*)—ACCOUNTING BY TRUSTEE—CONCLUSIVENESS.

A surrogate's decree, approving an account filed by testamentary trustees, in which they credited the stock dividend as capital held for the benefit of remaindermen, was conclusive on the owners of such stock, where there was no objection to the account by the life tenants.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 494; Dec. Dig. § 331.*]

2. TRUSTS (§ 272*)—STOCK DIVIDENDS—INCOME.

The stockholders of a corporation adopted a resolution reciting that the value of the assets exceeded the par value of the capital stock in the sum stated, and resolving that, for the purpose of representing in the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

capitalization existing surplus assets to that extent, the capital stock was thereby increased to that amount, and that the directors were authorized to distribute the stock pro rata to stockholders. *Held*, that presumptively all dividends, whether paid in cash or in stock, are income so as to belong to the life tenant, and the resolution of the stockholders did not rebut such presumption.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 383–385; Dec. Dig. § 272.*]

Appeal from Surrogate's Court, New York County.

Judicial settlement of the accounts of George Leask and others, as trustees under the will of Hudson Hoagland. From a decree settling the account (142 N. Y. Supp. 462), certain of the beneficiaries appeal. Modified and affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

James Gillin, of New York City, for appellants Laura Hoagland and Mary E. McCarty.

Henry W. Baird, of New York City, for appellant Charles F. Hoagland.

Thomas S. Ormiston, of New York City, for appellant Mary F. Rose.

J. Hampden Dougherty and William H. Hamilton, both of New York City, for respondents.

HOTCHKISS, J. In December, 1906, the Pullman Company declared a stock dividend, in pursuance of which the trustees came into possession of certain shares of that company. Thereafter the trustees filed with the surrogate an account in which they credited as capital, held for the benefit of remaindermen, the shares so received. No objection was made to this account by any of the parties representing the life interests, and a decree was passed approving the account as filed. Thereafter, in March, 1910, the Pullman Company distributed among its stockholders a further stock dividend, in pursuance of which the trustees received additional shares. In their account, upon which the decree was made which gives rise to this appeal, the trustees credited these additional shares to the remaindermen, following the same course they had pursued with respect to the shares received in pursuance of the 1906 dividend. To this last account, the appellants, representing various life interests, filed exceptions, by virtue of which they claim all of the shares received by the trustees from both of the aforesaid stock dividends. The issues were sent to a referee, who held that the stock resulting from both dividends should be treated as income belonging to the representatives of the life interests, and that the latter were not estopped by the decree on the former accounting, but were entitled to raise the question of the proper disposition of the shares received as the result of the 1906 dividend. The learned surrogate refused to confirm the report, holding: (1) That the decree upon the former accounting was binding so far as it related to the 1906 dividend, and as to that dividend only; and (2) that the evidence

with respect to the 1910 dividend was prima facie sufficient to justify a holding that such dividend was capital, and that the burden lay upon the life interests to prove to the contrary, a burden which they had not sustained.

[1] So far as the former accounting is concerned, there is no doubt that the learned surrogate was right. Matter of Bannin, 142 App. Div. 436, 127 N. Y. Supp. 92. But we do not agree with his conclusions with respect to 1910 dividend.

[2] Presumptively, all dividends, whether paid in cash or in stock, are income. The only evidence with respect to the circumstances under which the dividend of 1910 was declared is the following statement appearing in one of the schedules attached to the account filed by the trustees:

"On March 21, 1910, the stockholders of the Pullman Company adopted the following resolution: Whereas, the value of the assets of this company exceeds the par value of the capital stock by more than twenty million dollars: Resolved, that for the purpose of representing in the capitalization of this company existing surplus assets to the extent of twenty million dollars, the capital stock of the company is hereby increased  *  *  *  to the amount of twenty million dollars, and  *  *  *  that the directors be authorized to distribute said twenty million dollars capital stock pro rata, to stockholders of the company," etc.

There is nothing in this resolution to indicate from what source the surplus assets of the company, represented by the dividend, were derived, and nothing to rebut the presumption that such surplus represented an accumulation of earnings or profits. In this situation, the stock dividend prima facie belonged to the life interests (Lowry v. Farmers' Loan & Trust Co., 172 N. Y. 137, 64 N. E. 796), and the burden was upon the trustees to prove to the contrary before they could properly include the shares in their account under the head of capital.

The decree appealed from should be modified so far as it sustained the objections to the referee's report relating to the stock dividend of 1910, and the referee's report as to such dividend confirmed. If, however, the executors desire to take testimony as to the source from which the assets representing such dividend were derived, a referee will be appointed for that purpose, and the entry of the final order reserved until the coming in of the report.

As to the dividend of 1906, the decree should be affirmed, without costs to either party. All concur.