## WILL OF BARRON.

*November 20, 1915—May 23, 1916.*

*Trusts and trustees: "Income" and "corpus" of trust estate: Division of profits: Increase in value: Insurance moneys: Dividends on corporate stock: Purchase and resale of property: Interest accrued at death of* cestui que trust: *Dividends afterwards declared.*

1. The surplus and undivided profits of a corporation, existing at the time of the death of a stockholder, belong to the *corpus* of his estate rather than to a person who, under a trust devise in his will, becomes entitled to the income and increase of the estate.

2. A division of the profits of the corporation for the year during which the stockholder died, and payment of the part deemed to have accrued before his death to the *corpus* and the remainder to the person entitled to the income of the trust estate, was a matter which might be agreed upon and settled by the parties interested.

3. The so-called unearned increment, or increase in the value of the property constituting the *corpus* of the trust estate, and also any insurance money received in excess of the cost of repairs on a building damaged by fire, belonged to the *corpus*.

4. Where the trustees, after having purchased corporate shares as part of the trust estate, became entitled, as holders thereof, to subscribe for additional shares and sold such right, the amount received for that right must be treated as ordinary profit on investment, in the absence of evidence furnishing sufficient data for a division thereof between *corpus* and income.

5. An extra cash dividend on corporate shares held by the trustees belonged to the income and not to the *corpus*, even though the trustees used it as part payment for additional shares in the same corporation.

6. Where trustees, who hold property of which the income and increase is to be paid to a beneficiary during his life, have a power of sale and reinvestment, the *corpus* of the trust estate at any given time consists of (1) the identical property which was put into the *corpus* by the creator of the trust and still remains on hand, plus (2), to balance any money which originally went into the *corpus*, a like amount of money or property of value equal to such original amount of money, plus (3), if any of the property which originally went to make the *corpus* has been sold, money in amount, or property in value, equal to that part of the

original *corpus* sold plus the net amount of natural or unearned increment up to that time actually realized upon the property sold which was originally part of the *corpus.*

7. Where in such a case the trustees have purchased and resold property, the profits realized should be divided by assigning to the *corpus* whatever is necessary to make good any losses thereof and keep it at the proper amount under the rule last above stated, and by paying out the remainder as income.

8. Dividends declared after the death of the life beneficiary upon corporate shares held by the trustees were not income until so declared, and hence did not belong to such beneficiary; but the interest which had accrued upon ordinary loans on securities up to the time of his death, though not payable until thereafter, properly belonged to his estate.

APPEALS from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Modified and affirmed.*

All the parties appeal.

For the complainant, *Hannah S. Barron,* as executrix of the will of Charles H. Barron, there were briefs by *McConnell & Schweizer,* and oral argument by *C. H. Schweizer.*

For the defendants ·*George W. Burton* and *Alfred James,* as trustees of the estate of Edwin R. Barron, there was a brief by *George H. Gordon, Law & Gordon,* and oral argument by *George H. Gordon.*

The following opinion was filed January 11, 1916:

TIMLIN, J.    This suit is by the executrix of a life beneficiary of the "income and increase," against trustees, to recover items which it is claimed should have been paid over to the life beneficiary.    Edwin R. Barron died March 23, 1897, testate.    After some bequests he devised the residue of his estate to two of his executors in trust to pay the rents, income, and increase thereof to testator's brother, the third executor, during the life of the latter, and at the demise of his said brother to other designated beneficiaries during life, the trust to be closed and the property distributed at the death of two of the latter.    The trustees had power of sale, investment,

and reinvestment. On March 9, 1898, the final account of the executors was allowed and they were discharged and the trustees' liability began. The two executors who were not beneficiaries were the first trustees. On August 4, 1910, the beneficiary, C. H. Barron, died. The evidence is quite meager on all points. It appeared, however, that the testator owned 400 out of 650 shares in the E. R. Barron Co., a corporation, and also owned the real estate hereinafter mentioned. The appraised value of the *corpus* of the estate turned over to the trustees was $122,960.62. Some of the property so turned over brought on resale in excess of the inventoried value as follows: Real estate, $4,500; shares of the E. R. Barron Co. sold, $10,125. There was also $666.11 collected from fire insurance companies for loss on building situated on this real estate over and above the amount spent in repair. The total increment of this kind was $15,291.11. If this were added to the original appraisal it would make a total *corpus* of $138,251.73. As near as can be ascertained, at the death of the beneficiary, C. H. Barron, the trust estate inventoried $140,171.66. In this, however, was included profit of $999.50 on United States bonds bought by the trustees and resold; profit on similar purchases of Batavia Bank stock of $825; dividend on Northwestern Bank stock, $880; sale of rights of stockholders to subscribe for stock, $341.66; profit on shares of E. R. Barron Co. purchased and resold by trustees, $14,137.50. These profits, exclusive of the $880 dividend, amounted to $16,303.66, and if they are subtracted from the value of the trust estate at about the time of the death of the first beneficiary it would leave that trust estate $123,868. If all these profits last mentioned go to income and the natural increment or increase belongs to the *corpus,* there would be a loss on that *corpus* of $14,383.73. If the natural increment or increase of property which originally formed part of the *corpus* of the trust estate and the profits made by the trustees, together amounting to $31,594.77, be subtracted from the present value of the trust estate, it will

leave $108,576.89, and show that without the increment and profits above mentioned there must have been losses of the *corpus* of the trust estate to the amount of $14,383.73.    The following items are in controversy in this case:

Item 1.  $3,663.52.  Forty sixty-fifths of the total profits of the E. R. Barron Co. for the year 1897 were $12,974.47. The executors in and by their final account which was allowed, computed or estimated that of the total profits of that corporation for that year $3,663.52 accrued prior to the death of the testator, and after deducting this last sum the corporation declared and paid a dividend of the remainder of the profits.    This dividend went to income and was paid over to the beneficiary.    At the end of the next fiscal year of the corporation it declared and paid one dividend out of the profits of the last mentioned year, the trustees' share of which went to income, and another dividend including all the surplus and undivided profits which were accumulated prior to the death of the testator, including the item above mentioned of $3,663.52.    The trustees' share of this last dividend was added by them to *corpus*.    This division for the year 1897 of profits before, and those made after, testator's death was agreed upon.    The adult beneficiary as one of the executors agreed to this, reported it to the county court, and acquiesced in that agreement for more than twelve years, and, acting with the other executors, procured an order of the county court discharging the executors and turning this item with the *corpus* over to the trustees.    This item was properly disallowed by the circuit court.    The surplus of a corporation not declared as a dividend cannot be treated as income until it is declared as a dividend, for the obvious reason that what is surplus one year may be swept away by losses the next year.    It is a fluctuating quantity.    Surplus and undivided profits of a corporation, existing at the time of the death of the testator who is a stockholder, go into the *corpus* of the trust estate. This division of the profits of the year 1897 and the payment

of part thereof to the beneficiary and part to the *corpus* of the trust estate was something which might be agreed upon and settled between the interested parties, and, as we have seen, such settlement was made. The division was in line with *Miller v. Payne,* 150 Wis. 354, 136 N. W. 811. The parties were competent to contract on this subject. *Matter of Leask,* 159 App. Div. 102, 143 N. Y. Supp. 865.

Items 2, 3, and 4. $4,500, $10,125, and $666.11 = $15,291.11. Certain real property occupied as a store and part of the *corpus* of the trust estate at the death of the testator was appraised for the trustees at $40,000 and thereafter sold by them for $44,500. Fifty shares of the capital stock of the E. R. Barron Co., part of the original *corpus,* were sold by the trustees at an advance of $10 per share over the appraised value, and 350 like shares at an advance of $27.50 per share, making a profit of $10,125. The store building aforesaid was during the administration of the trustees damaged by fire and the amount of insurance received exceeded the amount which they expended for repairs on account of said fire by $666.11. The unearned increment so called, or the increase in value of the property constituting the *corpus* of the trust estate, and the insurance received as indemnity against loss of part of that *corpus,* all belong to the latter, and these items were properly disallowed.

Items 5, 6, 7a, 8, and 9. $999.50, $825, $880, $315, $26.66, and $14,137.50 = $17,183.66. The trustees bought $10,000 of United States bonds and thereafter resold them at a profit of $999.50. They also bought fifteen shares of the capital stock of the Batavia National Bank and resold them at a profit of $825. This bank was organized in 1904 with a capital stock of $400,000 and a surplus of $100,000. The stock was sold during the year 1909. The only evidence affecting this question which we find is that it had in 1909 undivided profits of $14,000 and in 1910 of $22,000. About October 16, 1900, the trustees purchased forty-four shares of

the capital stock of the Northwestern National Bank of Minneapolis for $6,600, or $150 per share. The par value of these shares was $100 each. The trustees received thereafter regular quarterly dividends of two and one-half per cent. on said stock, which were paid over to the beneficiary in his lifetime. On or about June 30, 1908, the bank declared and paid an extra dividend of twenty per cent. on the stock, amounting to $880. The surplus and undivided profits of this bank on January 1, 1900, amounted to $421,388.71; on June 30, 1908, $1,242,071.87. The quarterly dividend on the date last mentioned of $25,000 and a special twenty per cent. dividend of $200,000 left the surplus and undivided profits on July 1, 1908, $1,017,071.87. The trustees as owners of these forty-four shares were entitled to subscribe to a proportion of shares in an increase of capitalization of said bank then consummated. The number of shares is not shown. They sold their right for $315 and received this money. There is no showing what was the amount of the increase of the capital stock or whether it took in all the surplus and undivided profits which existed on July 1, 1908, including the surplus and undivided profits of $421,388.71 which existed at the time the purchase of shares was made; or whether it did not. There is no evidence showing the cost of the new shares. Ordinarily this $315 should be divided between *corpus* and income in the proportion of 421,388 to 595,683 (omitting fractions), but the plaintiff has furnished in this case no sufficient data upon which to make the division, so we treat it as ordinary profit on investment by the trustees. *Stokes's Estate,* 240 Pa. St. 277, 87 Atl. 971; *Holbrook v. Holbrook,* 74 N. H. 201, 66 Atl. 124. The trustees having invested a part of the trust funds in the stock of the Continental and Commercial National Bank of Chicago, Illinois, and that bank having increased its capital stock, they sold their right to subscribe for their proportion of the increased stock and received on such sale the sum of $26.66.

It is not shown whether this bank had any surplus or undivided profits or the amount of its original stock or the amount of the increase. On purchases and resales by them during their term of 377 shares of the capital stock of the E. R. Barron Co. the trustees realized a profit of $14,137.50. This company during this time paid out in dividends each year all its profits for the year.

Of this group of items the circuit court allowed to the plaintiff, as representative of the deceased entitled to the income for life, only the item of $880 above mentioned. That item was clearly a cash dividend and belonged to the income notwithstanding the trustees added $120 to it and applied it on the purchase of additional shares of stock in the same bank. It was properly allowed. *Miller v. Payne, supra; Holbrook v. Holbrook, supra.* The item received for sale of rights in the Chicago bank must be presumed to represent good will or other increment to the original capital of the bank, increasing the value of the shares above the amount at which they were sold to this extent. That would be the presumption in the absence of evidence. It therefore belongs to the *corpus.*

Where the trustees have a power of sale and reinvestment the *corpus* of the trust estate at any given time consists of (1) the identical property which was put into the *corpus* by the creator of the trust and still remains on hand, plus (2), to balance any money which originally went into the *corpus,* a like amount of money or property of value equal to such original amount of money, plus (3), if any of the property which originally went to make the *corpus* has been sold, money in amount, or property in value, equal to that part of the original *corpus* sold plus the net amount of natural or unearned increment up to that time actually realized upon the property sold which was originally part of the *corpus.* This keeps the *corpus* plus its unearned increment intact except in cases of unavoidable loss of *corpus.* Profits realized on pur-

chases by the trustees and resales of the same property by
them should, at the next succeeding income payment day, be
divided by placing to *corpus* whatever is necessary to keep it
up to the foregoing figure, thus making good losses of *corpus.*
All profits upon such resales not necessary for this purpose
should be paid out as income.    We have no evidence inform-
ing us whether any part of the property originally forming
part of the *corpus* remains on hand, but taking values shown
by the evidence we have the following:

| | | |
|---|---:|---:|
| Value of original *corpus* | $122,960 | 62 |
| Unearned increment actually realized on real property sold | 4,500, | 00 |
| Insurance money aforesaid | 666 | 11 |
| Same on shares in E. R. Barron Co | 10,125 | 00 |
| Same on sale of rights | 26 | 66 |
| Total *corpus* at death of beneficiary | $138,278 | 39 |
| Total value of property on hand at death of beneficiary | $140,171 | 66 |
| Less item of income above mentioned included | 880 | 00 |
| Total | $139,291 | 66 |
| Total amount of profits made on their investments by trustees | $16,303 | 66 |

Of this $15,597.62 will be taken to keep the *corpus* with
its lawful increment intact, and $706.04 will be carried to
income.    Therefore the recovery permitted by the circuit
court should be increased by $706.04.

Items 10 and 11. $9,324 and $209.23.    After the death of
the beneficiary, Charles H. Barron, and on January 1, 1911,
the directors of the E. R. Barron Co. declared a dividend,
which was received by the trustees on January 10, 1911.
The amount of this dividend which came to the stock of that
company then in the hands of the trustees amounted to
$9,324, and the dividend represented earnings for the year
from January 1, 1910, to December 31, 1910.    It will be re-
membered that the beneficiary died August 4th of that year.
This dividend belonged to the next life beneficiary and not to
Charles H. Barron, because, not having been declared a divi-
dend during his life, it was not income of the trust estate re-
ceived during his life and it was not apportionable.    Divi-

dends on shares of corporate stock in the hands of trustees are not income until such dividends are declared by the directors of the corporation, who have a wide discretion whether to withhold or declare such dividends. Interest to the amount of $209.23 upon securities held by the trustees had accrued up to the date of the death of the beneficiary, Charles H. Barron, but was not payable until after his death. Assuming these were ordinary loans on securities, the circuit court properly allowed the plaintiff the interest accrued up to the time of the death of the beneficiary.

*By the Court.*—Judgment modified on plaintiff's appeal by adding to the recovery therein allowed plaintiff the sum of $706.04, with interest at six per cent. from the commencement of this action, and as so modified affirmed, and on defendants' appeal judgment affirmed, without costs in either case, except that the defendants must pay the clerk's fees.

A motion for a rehearing was denied, with $25 costs, on May 23, 1916.