IN RE SHERMAN TRUST.

SCOTT MACEACHRON, Administrator, Appellant, v. TRUSTEES OF
IOWA COLLEGE et al., Appellees.

**TRUSTS:** Right of Life Tenant to Increased Value of Bank Stock.
Where money is invested in bank stock in trust for a life devisee,
under a will providing that the annual income shall be paid to the
devisee during his lifetime, and that at his death "the *principal*
sum" shall be paid to a named remainderman, any added market
value accruing to the stock during the life of the life devisee be-
cause of the policy of the corporation to declare and pay small
dividends and to accumulate a large undivided surplus, belongs, at
the death of the life devisee, to the latter's estate, and not to the
remaindermen. The basis for such a holding is that the clear
*intent* of the testator, in the use of the term "principal" sum, must
rule—not the corporate act of the bank officials.

*Appeal from .Poweshiek District Court.*—HENRY SILWOLD,
Judge.

SEPTEMBER 29, 1920.

REHEARING DENIED MARCH 11, 1921.

THERE is involved the construction of a trust, granted by
will. The will of L. N. Sherman set aside a sum of money to be
held in trust for his son. Of this fund, the trustees invested
$2,200 in the stock of a bank. The book and market value of the
stock was, at the time of the purchase by the trustees, $110 the
share. The bank prospered exceedingly, and, when the son died,
the value of this stock had risen from $110 to about $225 the
share. This rise in value was due to the fact that the bank paid
but relatively small dividends. If it had been willing to let
the shares remain at the price they were worth when the trustees
bought them, a much larger dividend than was paid to the life
tenant could have been paid to him. The appellees claim, and
the trial court held, that nothing was due the life tenant except
the dividends actually declared, and that said accretions in value

were an addition to the corpus, and were the property of the remaindermen. It is from this holding that the administrator of the estate of the deceased son appeals.—*Reversed.*

*J. G. Shifflett,* for appellant.

*A. C. Lyon* and *Rayburn & Lyman,* for appellees.

SALINGER, J.—I. The relief sought is that the $2,200 invested should be surrendered to the remaindermen, and that the difference between that sum and the value of the TRUSTS: right of life tenant to increased value of bank stock. stock, to wit, $4,500, be surrendered to the estate of the life tenant, or, in the alternative, that the stock be ordered sold, and apportionment made in favor of the estate of the life tenant in the proportion that $2,200 is to $4,500.

It may be conceded that rules about to be set forth and invoked by appellee have often been held to obtain, where the trust property consisted of corporation stock. See *Smith v. Hooper,* 95 Md. 16 (51 Atl. 844) ; *Greene v. Smith,* 17 R. I. 28 (19 Atl. 1081). But see, as to conflict thereon, 39 Cyc. 445; 40 Cyc. 1790. But, if it makes a difference, the trust fund we are dealing with was money.

There is a long line of decisions to the effect that the life tenant must be content with the action of the corporation, and that he takes only such dividends as the corporation actually declares. *Lauman v. Foster,* 157 Iowa 275; *Will of Barron,* 163 Wis. 275 (155 N. W. 1087) ; *Hyatt v. Allen,* 56 N. Y. 553; *Spooner v. Phillips,* 62 Conn. 62 (24 Atl. 524, 527) ; *Beveridge v. New York El. R. Co.,* 112 N. Y. 1 (19 N. E. 489) ; *Greene v. Smith,* 17 R. I. 28 (19 Atl. 1081) ; *In re Kernochan,* 104 N. Y. 618 (11 N. E. 149). And if the declared dividend is kept small, because, in good faith, it is deemed wise to reserve part of the profits to create a surplus against future years that may not be profitable, or if the low dividend is due to a good-faith appropriation of profits for betterments that would have a tendency to make dividends larger in the future, that which is not put into the dividend because of these purposes and appropriations, and which accretes the value of the stock, becomes an enlargement

of the corpus, and does not belong to the life tenant. *Hotchkiss v. Brainerd Quarry Co.*, 58 Conn. 120 (19 Atl. 521); *Straker v. Wilson*, L. R. 6 Ch. App. Cas. (1870) *503; *Talbot v. Milliken*, 221 Mass. 367 (108 N. E. 1060); *Lauman v. Foster*, 157 Iowa 275; *Spooner v. Phillips*, 62 Conn. 62 (24 Atl. 524); 9 Am. &. Eng. Encyc. of Law (2d Ed.) 710; *Lord v. Brooks*, 52 N. H. 72, at 85. That is the holding in Georgia as well, but it is controlled by the Georgia statute. *In re Heaton's Estate*, 89 Vt. 550 (96 Atl. 21). The Massachusetts rule, so called, is that, no matter how small a stock dividend is, or how large is a cash dividend, the first is an accretion of the capital, while the other is income. See the analysis of *Minot.v. Paine*, 99 Mass. 101, 108, made in *In re Heaton's Estate*, 89 Vt. 550 (96 Atl. 21). And see *Talbot v. Milliken*, 221 Mass. 367 (108 N. E. 1060). But Mr. Thompson, in his work on Corporations (1st Ed.), Section 2222, and many decisions, criticise this position. And it seems to be quite the general consensus of opinion that the mere form is immaterial, and that the relative rights of remainderman and life tenant are not necessarily controlled by the fact that a dividend is a stock dividend or is a cash dividend. As said in *Kalbach v. Clark*, 133 Iowa 215, 220, the mere fact that the directors of the bank call the dividend one thing or the other is not controlling. And see 10 Cyc. 559, 560; 16 Cyc. 624.

So, on the one hand, it is asserted that increment in value due to undivided profits of surplus earned or put to the credit of the stock, though not declared in the form of dividends, should. be awarded to the life tenant (*Wallace v. Wallace*, 90 S. C. 61 [72 S. E. 553]); held that increase in value is income and, therefore, should go to the life beneficiary (*Billings v. Warren*, 216 Ill. 281 [74 N. E. 1050]); that everything in the nature of profits accruing during the continuance of the life estate belongs to the life tenant (16 Cyc. 621); all benefit and profit whatsoever coming from the property (*In re Turfler's Estate*, 24 N. Y. Supp. 91); that the word "income" is very comprehensive (*Sohier v. Eldridge*, 103 Mass. 345, 350), and covers accumulated earnings or profits (40 Cyc. 1789, 1790, *Thorn v. De Breteuil*, 86 App. Div. 405 [83 N. Y. Supp. 849]); that income is anything which is gained from investments; anything that property or business earns, any profit (22 Cyc. 65, 66, 39 Cyc. 444); and that, if trust

funds are invested in corporation stock, income includes all earnings or accumulated profits not paid out of the capital (39 Cyc. 445).

On the other hand, it has been held in *Lauman v. Foster*, 157 Iowa, at 279, and *Reed v. Head*, 88 Mass. 174, 177, that "income," used in a will which bequeaths stock, means the same thing as dividends. And it was held in *Spooner v. Phillips*, 62 Conn. 62 (24 Atl. 524), and *Smith v. Hooper*, 95 Md. 16 (51 Atl. 844), that income is not the equivalent of "accretion." But need we attempt to reconcile the conflict?

II.   As between remaindermen and life tenants, the question is not what corporation management may do about declaring dividends, so far as stockholders are concerned. What these managements may do is corporation law. What the rights of the remaindermen and life tenants are in corporation shares is a question of what it may reasonably be found was the intent of the creator of the trust. *Thomas v. Gregg*, 78 Md. 545 (28 Atl. 565, 568); *Holbrook v. Holbrook*, 74 N. H. 201 (66 Atl. 124); *McLouth v. Hunt*, 154 N. Y. 179 (48 N. E. 548); *Luling v. Atlantic Mut. Ins. Co.*, 45 Barb. (N. Y.) 510; *Howell v. Chicago & N. W. R. Co.*, 51 Barb. (N. Y.) 378; *Smith v. Prattville Mfg. Co.*, 29 Ala. 503; *Rance's* case, 6 Ch. App. (1870) *104; *Bloxam v. Metropolitan R. Co.*, 3 Ch. App. (1867) *337; *Simpson v. Millsaps*, 80 Miss. 239 (31 So. 912, 915). In *Pritchitt v. Nashville Tr. Co.*, 96 Tenn. 472 (36 S. W. 1064), it was said:

"There can be no doubt that reserved and accumulated earnings * * * are corporate property; nevertheless we are unable to see how that fact determines or affects the question of interest therein as between life tenant and remainderman of shares. Those persons acquire their interests under the will or deed, and not through any action of the corporation."

"Though endowed with the largest discretion in the honest management of its business, and allowed at pleasure to convert its net earnings into capital stock through the medium of stock dividends, a corporation cannot by that act * * * turn any portion of those earnings from the life tenant to the remainderman of original stock." *Pritchitt v. Nashville Tr. Co.*, supra.

Reserved and accumulated earnings held and invested by the corporation are corporate property; but that this is so in

no way determines or affects the question of interest therein, as between life tenant and remaindermen. In *Milner v. Brokhausen,* 153 Iowa 560, it is made plain that corporation law rules apply to an interpretation of the trust only if the will that creates the trust does not limit or restrict such application. It is said in *McLouth v. Hunt,* 154 N. Y. 179 (48 N. E. 548), that life tenants are usually the nearest and dearest object of the testator's bounty; therefore, any claim that the provision for them may be voted up or down, increased or diminished, as the corporation may elect, and that such action precludes the court from looking into the real nature and substance of the transaction and adjusting the rights of the parties according to justice and equity, "is a proposition that cannot be accepted." In 2 Thompson on Corporations (1st Ed.), Section 2222, the author says that where, say, a provision is for an income to go to widow and child out of railway shares, it ought not to be held that the railroad, by electing to declare stock dividends only, may thus, by the mere will of its board of directors, which is exerted to serve the interest of the corporation, and has no reference whatever to carrying out the trust of the will, save both the corpus and the income to the children, while the widow is allowed to starve. The same condemnation is found in *Simpson v. Millsaps,* 80 Miss. 239 (31 So. 912, 915). A solution is found in the cases which affirm the right of a corporation to declare or ignore dividends so far as its stockholders as such are concerned. This power does not reach and does not conclude a dispute between remaindermen and life tenants.

III. The flaw in the cases that try and fix a hard and fast rule here by adopting corporation law is that, from the fact that the trust fund is, say, corporation stock, they assume in every case that the testator intended the distribution to be subject to the rules that govern the management of the corporation in which the stock is owned. The case of *In re Armitage,* 3 Ch. (1893) 337, is illustrative. It rules squarely that, when the testator leaves shares to a tenant for life, his intention is the tenant shall have the income in the shape of dividends declared during his lifetime, and he intends that the tenant shall receive profits in no other sense: that, for instance, he does not intend the life tenant shall have such profits as arise from a realization on shares.

This line of reasoning is followed out and approved in *Smith v. Hooper,* 95 Md. 16 (51 Atl. 844). And it has been held such intention of the creator of the trust may be presumed (*Peirce v. Burroughs,* 58 N. H. 302, *Walker v. Walker,* 68 N. H. 407 [39 Atl. 432], *Holbrook v. Holbrook,* 74 N. H. 201 [66 Atl. 124]), and that such intention *is* presumed from silence from failure to express a different one.

Grant that this is sound law where the will is silent—where no intention that the ordinary rules that govern the relation of management and shareholder shall not govern in determining what may be given to the life tenant. The fact remains that a vitally different situation is presented when the will makes it clear that the life tenant shall have, despite general rules such as that he can take nothing except dividends declared by the corporation. No case of the many which affirm that the interest of the life tenant is confined to the receipt of declared dividends has ever ventured to as much as intimate that this is true where the testator indicates the intention that these rules shall not govern. As said in *Wallace v. Wallace,* 90 S. C. 61 (72 S. E. 553), while, in the absence of contrary direction in the testament, the rules that govern management and stockholder do control, after all, "the trust deed is the law of the case. The plaintiff had the right to make or not to make the deed as she thought best, and, making it, she had the right to frame the details as she pleased; and she made them so strong that we do not feel authorized to disregard them in favor of any supposed general rule of practice upon the subject."

In *Pritchitt v. Nashville Trust Co.,* 96 Tenn. 472 (36 S. W. 1064), the court said that the life tenant and the remainderman acquire their interest under the will, and not through any action of the corporation; in *Wilberding v. Miller,* 88 Ohio St. 609 (L. R. A. 1916 A 718, 729), that, notwithstanding general rules, say, the one which gives the right to lower dividends because betterments are made, the intention of the testator to be derived from the language employed in the creation of the trust and from the relation of the parties to each other and the circumstances of the case must control, though, if there be no special direction in the will as to what shall be considered principal and what income, the testator will be presumed to have had in mind the legal

authority of the corporation to appropriate its assets to better-
ments, and presumed to have contemplated that the income
should come only from declared dividends. To like effect is *In re
Heaton's Estate,* 89 Vt. 550 (96 Atl. 21); *Millsaps'* case, 80 Miss.
239 (31 So. 912). It is all summed up in the *Millsaps* case with
the one statement that, the intention of the testator being the
pole star, the whole question is whether a court of conscience is
or is not bound to fully execute the trust according to the in-
tention of the donor.

Though the corporation may at will declare or decline to
declare a dividend, its actions cannot bind the courts as to the
proper ownership of a declared dividend. It can do nothing
to favor the life tenant or the remainderman as it may desire,
because there must first be considered whether the testator con-
templated what the corporation is doing. It does not have the
power to substitute its will for that of the testator, and, as a
result, starve the life tenant, say wife and children of testator,
for the benefit of remaindermen who may be unborn when the
will is made. *Hite's Devisees v. Hite's Exr.,* 93 Ky. 257 (20 S.
W. 778). To like effect is *In re Heaton's Estate,* 89 Vt. 550 (96
Atl. 21); *McLouth v. Hunt,* 154 N. Y. 179 (48 N. E. 548); and
*Soehnlein v. Soehnlein,* 146 Wis. 330 (131 N. W. 739). The cor-
poration and the courts may not defeat the just and clear pur-
pose of the testator. *Appeal of Smith,* 140 Pa. 344 (21 Atl. 438,
at 440). No rule of practice should work a failure to carry out
the intention of grantor in the trust. 1 Morawetz on Private
Corporations (2d Ed.), Section 466; 2 Beach on Private Corpora-
tions, Section 600; 1 Spelling on Private Corporations, Section
457. "Corpus," "principal," "dividend," "income," and
other words of like import, are but nomenclature. What shall
be given to the life tenant is fixed by the deed of trust, and mere
names and definitions cannot defeat the intent disclosed by that
instrument. 40 Cyc. 1788. And whether a distribution made
by a corporation during the continuance of the life estate is to
be regarded as income or as capital is primarily one of construc-
tion—a question of intention of the creator of the trust, mani-
fested by the will or other instrument by which the right to the
income is, for the time being, severed from the corpus. *In re
Heaton's Estate,* 89 Vt. 550 (96 Atl. 21). And the mere use of

such descriptive terms by a layman is of very little consequence, if the instrument as a whole makes plain an intention that, despite general rules of practice, the life tenant shall have more than would be given him under those rules. *Millsaps'* case, 80 Miss. 239 (31 So. 912); *Kalbach v. Clark,* 133 Iowa 215. The context may show that words, say like "income," are not to be construed in their technical sense. *Thompson's Appeal,* 100 Pa. St. 478; *Millar v. Douglass,* 42 Tex. 288, at 292. As said in *Wilberding's* case, supra, the intention of testator, collected from the language used and between the four corners of the will, is the pole star in the construction of the will; and decisions which have declared that shareholders' rules were conclusive, overlooked this fundamental rule. And in saying that intention is the controlling factor, it has been further said that the owner of shares may place interest therein as he pleases, unhampered by any power lodged in the corporation. *In re Heaton's Estate,* 89 Vt. 550 (96 Atl. 21).

So the sole question we have is: What was it that the creator of the trust before us intended should be received by the remaindermen and the life beneficiary, respectively,—what intention as to this is to be gathered from the will?

IV. The direction to the executors is to pay income annually to the son during life, and that, at death of the son, "said trustees or their successors are to pay the *principal sum* to the trustees of Iowa College, and to the American Home Missionary Society, to each one half, for the general uses of said institutions."

It is said, in the case of *In re Heaton's Estate,* 89 Vt. 550 (96 Atl. 21), that, where the remainderman receives the corpus, undiminished in value from what it was at the inception of the trust, this "is all that he can justly claim, unless the creator of the trust has evidenced an intention that he shall receive more." "Principal sum" means the "main" sum, being the amount left in trust,—the amount originally paid for and invested in the stock. 31 Cyc. 1173. Principal sum means also the "original gift," being once more the amount invested in the bank stock, and not its present value. 31 Cyc. 1174; *Gammon v. Gammon,* 153 Ill. 41 (38 N. E. 890). It has been held that, where property which was originally part of the corpus has been

sold, the adjustment, in order to give back the principal sum, must consider the money received in place of the property taken; and that so, the corpus plus its unearned increment will be kept intact. *Barron's* case, 163 Wis. 275 (155 N. W. 1087). If the intent of the testator is clear, the adjustment should be made as though the distribution were made at the dissolution of the corporation: that is to say, if the principal sum only is to be paid over, the trustee must take such steps as will separate the amount of that principal sum from what is on hand or may be realized for the stock. In analogy to the holding of *St. John v. Erie R. Co.,* 22 Wall. (U. S.) 136, the obtaining the principal sum for payment over involves a separating of all of the principal sum from the accretions upon that sum. Whatever in the value of the stock is earnings above the amount of the principal sum, therefore, belongs to the life tenant. *In re Rogers,* 161 N. Y. 108 (55 N. E. 393). And see *Timber Lake v. Shippers' Comp. Co.,* 72 Miss. 323 (16 So. 530); *Millsaps'* case, 80 Miss. 239 (31 So. 912). In *Milner v. Brokhausen,* 153 Iowa, at 565, a clause gave a remainder only, and subject to a life estate; and we said that, for one thing, this clause does not purport to bequeath to the remainderman anything other than the portion of the original estate which is left. The intention controls, and it may cover what the trustees shall do with the stock, in order to carry out the intention. *Wilberding v. Miller,* 88 Ohio St. 609 (L. R. A. 1916 A 731). It follows, then, that, no matter how inconvenient it may be to do it, the intention of the creator of the trust should be effectuated (*In re Heaton's Estate,* 89 Vt. 550 [96 Atl. 21]); and segregation or other steps required to pay on the principal sum, and the other the accretions, must be made or taken; and to this requirement all the different rules must yield, where, as here, the intent is clear that they shall yield.

The order below must be reversed, and the relief prayed by appellant granted.—*Reversed.*

Weaver, C. J., Ladd and Preston, JJ., concur.

Evans, J., takes no part.