ESTATE OF FREDERICK F. MERRILL: HAUGAN, Executor, and others, Appellants, vs. CHESTER and others, Executors, Respondents.

*May 10—June 18, 1928.*

For the appellants there was a brief by *Wheeler, Witte & Bark; Lines, Spooner & Quarles; Ernst von Briesen,* and *Olaf I. Rove,* all of Milwaukee, and oral argument by *Mr. von Briesen* and *Mr. Lyman G. Wheeler.*

For the respondents there was a brief by *Hoyt, Bender, McIntyre & Hoyt* of Milwaukee, and oral argument by *Frank M. Hoyt.*

OWEN, J. On July 5, 1902, Mary E. Merrill gave to her son Frederick Freeman Merrill 100 shares of stock in the State Bank of Chicago, the following being her letter of transmittal:

"Frederick Freeman Merrill,
"Milwaukee, Wisconsin.
"My Dear Son: I ask you hereby to accept as a token of my appreciation of your constant and unfailing devotion to my comfort and attention during the years since your father's death, a gift of stock held by me at this date in the State Bank of Chicago, Chicago, Illinois, under the sole and only condition that unless otherwise directed by me I shall receive the interest thereon during my life. This is to be construed as an absolute gift from me, and said stock shall under no circumstances be included in any will I may make at any future date, as it is not included in any will I have made at any previous date. With much love I remain, your affectionate mother, MARY E. MERRILL. July 5, 1902."

In response to this letter Frederick F. Merrill executed and delivered the following declaration to his mother, Mary E. Merrill:

"I, Frederick F. Merrill, of the city and county of Milwaukee, in the state of Wisconsin, do hereby covenant and agree to and with my mother, Mary E. Merrill, of the same place, as follows:
"Whereas, my mother has transferred and given to me 100 shares of the capital stock of State Bank of Chicago,

evidenced by a certificate for said 100 shares numbered sixty-four (64), dated January 2, 1900, issued to Mary E. Merrill, as owner, and assigned by indorsement to me:

"Now, therefore, in consideration of such transfer to me, I do promise and covenant that all income and dividends which shall accrue or be paid upon said stock shall be promptly paid to my said mother, as long as she shall live.

"And in case of the sale of the said stock by me, I do hereby promise and agree that I will, so long as my mother shall live after such sale of such stock by me, pay to her semi-annually a sum of money equal to the last semi-annual dividend upon said stock prior to the sale of said stock by me.

"In witness whereof, I have hereunto set my hand and seal this twenty-seventh (27th) day of August, A. D. 1902.
"FREDERICK F. MERRILL."

In *Estate of Merrill*, 193 Wis. 84, 213 N. W. 641, it was held by this court that the transaction as above outlined constituted a complete gift of the shares of stock mentioned to Frederick F. Merrill and that Mary E. Merrill was entitled to all dividends declared upon said stock, whether in the nature of cash or stock dividends, during her natural life.

Upon the death of Frederick F. Merrill the stock, then consisting of seventy-five shares, was impounded by the county court and placed in the hands of the First Wisconsin Trust Company as trustee. On the 16th day of August, 1927, said State Bank of Chicago increased its capital stock from two and one-half to five million dollars, authorizing the existing stockholders to subscribe for the new stock at par value in the ratio of one share of the new stock for each share of stock then held by them. The First Wisconsin Trust Company as trustee subscribed, paid for, and received seventy-five shares of such increased stock, which the county court held belonged to Mary E. Merrill. The question is whether this conclusion of the court is correct.

A stockholder is entitled to retain and maintain his relative and proportionate voice and influence in the control and

management of the affairs of the corporation by purchasing an amount of the increase of the capital stock proportionate to his then holdings therein. *Hammer v. Cash,* 172 Wis. 185, at p. 189, 178 N. W. 465. This right is appurtenant to the stock and belongs to the owner. Unless Frederick F. Merrill parted with this right in some way, the right to subscribe for the increased shares remained with his estate. An examination of Mrs. Merrill's letter of transmittal, in conjunction with his declaration, reveals no purpose on his part to transfer to her the right which the law accords to him to retain his proportional influence in the affairs of the corporation. First, considering the letter of Mary E. Merrill, we find plainly expressed her purpose to absolutely vest in Frederick the title to the shares of stock, her only condition being: "I shall receive the interest thereon during my life." In his declaration Frederick covenants "that all income and dividends which shall accrue or be paid upon said stock shall be promptly paid to my said mother, as long as she shall live." It will be noticed that the mother used the term "interest." She reserved "the interest thereon during my life." She no doubt had in mind the cash dividends paid upon the stock. It may be doubtful whether she had in mind stock dividends to be declared upon the stock. But whether she did or not, the term "interest" is not sufficiently broad to include the right to subscribe for new stock, which is a right accorded to stockholders to enable them to maintain their proportional interest in the affairs of the corporation. We have no difficulty in arriving at the conclusion that when she gave this stock to Frederick she had no thought of reserving any such right.

The covenant of Frederick is perhaps a little broader than the reservation of his mother. He covenants "that all income and dividends which shall accrue or be paid upon said stock shall be promptly paid to my said mother, as long as she shall live." "All income and dividends" is a more inclu-

sive expression than the term "interest," and indicates a generous response on the part of Frederick in meeting the condition imposed upon the gift by his mother. However, it is plain even from his declaration that there was no purpose on his part to vest her with title to all future dividends, because he provides that in case of a sale of the stock by him he will pay her semi-annually "a sum equal to the last semi-annual dividend upon said stock prior to the sale of said stock by me." This was a plain retention on the part of Frederick of the right to dispose of the stock as he saw fit, thereby vesting in the purchaser the right to all dividends as well as the right on the part of such purchaser to maintain his proportional interest in the corporation. This was acquiesced in by the mother until her death. This right of the disposal of the stock, which was plainly conceded to Frederick, is utterly inconsistent with the right of Mary E. Merrill to subscribe for the increased shares of stock. It seems plain that the right which the judgment of the county court vests in the estate of Mary E. Merrill is expressly negatived by the contract between the parties. But if this were not so, such right is negatived by general legal principles.

It is a well-nigh universal rule that the benefit of a right given by a corporation to its stockholders to subscribe at par, or other fixed amount less than the intrinsic value, for a new issue of stock, whether sold or exercised by taking new stock, is awarded to corpus and not to income, to the remainderman and not to the life tenant. 5 Fletcher, Corp. sec. 3463; 2 Cook, Corp. sec. 559; 24 A. L. R. 84; 42 A. L. R. 458. The note to the citation in Cook on Corporations and the note to be found in 24 A. L. R. 84 contain copious references to the authorities upon this question, and an extensive review of them here will serve no good purpose.

*Lauman v. Foster,* 157 Iowa, 275, 135 N. W. 14, is a recent case upon this subject, containing a rather extensive review of the authorities, wherein it is said that *Holbrook*

*v. Holbrook,* 74 N. H. 201, 66 Atl. 124, is the only case coming to the attention of the Iowa court holding to the contrary, and even in that case "the difficulties in the way of treating such option or right to subscribe for additional stock as income are suggested." But we are reminded that this court has adopted the rule of *Holbrook v. Holbrook* in the case of *Will of Barron,* 163 Wis. 275, 155 N. W. 1087. It is true that in that case it was held that the proceeds of the sale of the right to subscribe for additional shares should be divided *pro rata* between corpus and income. It is to be noted, however, that there was no discussion of the subject, a review of the authorities was not pretended, and the court simply contented itself with citing *Holbrook v. Holbrook* and a Pennsylvania case. Mr. Justice TIMLIN spoke for the court in *Will of Barron,* and it is interesting to note that in his dissenting opinion in *Soehnlein v. Soehnlein,* 146 Wis. 330, at p. 359, 131 N. W. 739, he said:

"I think, however, that all courts agree (1) that there exists a rule by which, upon increase of capital of a corporation by means of a stock dividend or otherwise, the new shares must be offered to existing shareholders *pro rata.* . . . (2) Where a trustee is such shareholder he has the right under this rule to take his *pro rata* of the new shares. (3) This right he holds for the owner of the shares, and if there is any profit, value, or advantage in the exercise of this right, such profit, value, or advantage belongs to the owner of the shares, not to the owner of the income. This is the rule even in New York courts, whose decisions the majority opinion finds free from confusion and professes to follow."

These opposing views expressed by the able jurist who wrote the opinion in *Will of Barron, supra,* indicate that he was writing without his usual consideration in the latter case. Since the decision in *Will of Barron* the authority of the Pennsylvania court has been withdrawn from the support of the doctrine there announced. The author of the note in 24 A. L. R. 84 points out the confusion upon this question

existing in the decisions of the Pennsylvania court. In *Dickinson's Estate,* 285 Pa. St. 449, 132 Atl. 352, decided February 8, 1926, however, the court squarely holds that the right we are discussing, as well as the proceeds arising from the sale of such right, belong to the corpus of a trust estate. This leaves the conclusion reached in the *Barron Case* supported only by the New Hampshire court. We shall not here attempt a restatement of the reasons supporting the majority rule. They are readily available to the student of the subject. Suffice it to say that those reasons appeal to us, as they have to the great majority of the courts, as sound. On the point here involved, we do not think the doctrine of the *Barron Case* should stand, and we take this opportunity to overrule it.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in accordance with this opinion.