ESTATE OF DITTMER.

*October 11—December 4, 1928.*

.For the appellant there was a brief by *Albert H. Krugmeier* of Appleton, attorney, and *Schubring, Ryan, Clarke & Petersen* and *Ralph E. Axley,* all of Madison, of counsel, and oral argument by *Mr. Axley.*

For the respondent the cause was submitted on the brief of *Bradford & Bradford* of Appleton.

ROSENBERRY, J.  F. R. Dittmer died testate on the 7th day of December, 1915.  By the third clause of his will, which was duly admitted to probate, the deceased gave the income of his estate to his wife during her life as long as she remained his widow.  The provision was as follows:

"Third.  As long as my wife remains my widow she shall have the entire income of my estate for her use and benefit

and for the support, maintenance, and education of my children until they arrive at such age as to be able to maintain themselves, at any event not any longer than until they are twenty-one years old. However, it is my aim that my children should become industrious citizens, and for that reason they should either assist in supplying the home or support partially or entirely themselves after they arrive at the age of sixteen years. Should she never marry again, she is to have and enjoy the income from my estate until her death."

The estate consisted in part of thirty shares of common stock of the First National Bank of Seymour, Wisconsin, hereinafter referred to as the bank, and ten shares of the common stock of the Security Loan & Guaranty Company of Seymour, hereinafter referred to as the security company. On June 12, 1920, the bank declared a cash dividend of 112 per cent. On January 11, 1919, the security company declared a cash dividend of 115 per cent. The controversy between the parties arises upon the proper distribution of these dividends between the life beneficiary and the remaindermen. There is no controversy as to the book or intrinsic value of this stock at the various times in question. The situation of the corporations at the time of the testator's death, at the time the dividends were declared, and at the time the life estate terminated is best disclosed by reference to Exhibit 8, which is as follows:

Statement of book value of shares of stock of the First National Bank of Seymour at times pertinent to the case, derived from bank statements of those dates:

|  | Per share. | Value of 30 shares. |
|---|---|---|
| Dec. 7, 1915, being date of testator's death.... | $162 83 | |
| 30 shares @ 162.83..................... | | $4,884 70 |
| June 12, 1920, being date immediately before declaration of 112 % dividend............. | 220 39 | |
| 30 shares @ 220.39..................... | | 6,611 78 |
| June 14, 1920, being day 112 % dividend paid. Value shown after dividend paid.......... | 129 20 | |
| 30 shares @ 129.20..................... | | 3,876 24 |
| June 3, 1926, last report available............ | 186 82 | |
| 30 shares @ 186.82.'..................... | | 5,604 60 |

Statement of book value of shares of stock of the Security Loan & Guaranty Company of Seymour, Wisconsin, at time pertinent to this case, derived from the statements of the condition of the company closest to pertinent dates:

|  | Per share. | Value of 10 shares. |
|---|---|---|
| Dec. 1, 1915, being date of report closest to date of testator's death | $136 34 | |
| 10 shares @ 136.34 | | $1,363 45 |
| Jan. 1, 1919, being date of report closest to 115 % dividend | 219 93 | |
| 10 shares @ 219.93 | | 2,199 34 |
| Report of Jan. 1, 1919, altered by payment of 115 % dividend and sale of new shares doubling capital of company | 102 46 | |
| 10 shares @ 102.46 | | 1,024 67 |
| June 1, 1926, last report available | 157 89 | |
| 10 shares @ 157.89 | | 1,578 94 |

The contention of the life beneficiary is that the dividend upon the bank stock declared June 14, 1920, amounting to $3,360, belonged to the life beneficiary as income; the life beneficiary treated it as such and converted it to her own use. It is the further contention of the life beneficiary that the dividend upon the security company stock declared January 11, 1919, amounting to $1,150, was income and belonged to the life beneficiary as such, and that she had a right to convert it to her own use as she did. While the representatives of the life beneficiary conceded that a dividend could not be declared which impaired the corpus of the trust estate, it is argued that because subsequent earnings which were not distributed at the time of the death of the life beneficiary have more than restored the stock to its book value as of the date of the testator's death, there has been no impairment of the corpus and therefore no just claim can be made against the estate of the life beneficiary. On the other hand, it is contended on behalf of the remaindermen that the distribution of the dividends declared by the respective corporations must be made and its validity determined as of the date of the distribution, and if all or any part of the dividend was declared out of the earnings accumulated at or prior to the

creation of the trust estate, that so much of the dividend as is necessary to restore the corpus of the trust estate belongs to the remaindermen.

Both parties cite and rely upon *Soehnlein v. Soehnlein,* 146 Wis. 330, 131 N. W. 739, and in the briefs are cited *Miller v. Payne,* 150 Wis. 354, 136 N. W. 811; *Will of Barron,* 163 Wis. 275, 155 N. W. 1087; *Estate of Merrill: Haugan.v. Merrill,* 196 Wis. 351, 220 N. W. 215. In this connection we also call attention to the *Matter of Osborne,* 209 N. Y. 450, 103 N. E. 823, decided two years after the *Soehnlein Case.*

The determination of questions of the character raised in this case must always and under all circumstances give full effect to the intention of the testator. It happens not infrequently. that situations arise which are not contemplated by the testator. Much difficulty would be avoided if testators would specify in their wills what is meant by the income which is to go to the life beneficiary. After the decision by the New York court of appeals in the *Matter of Osborne, supra,* the legislature of the state of New York enacted a statute which provides that the intent of the testator where expressed shall govern, but, in the absence of such expression, stock dividends shall go to capital (ch. 452, Laws of 1922). A workable rule which should be applied in the absence of extraordinary circumstances is that laid down by the court of appeals in the *Osborne Case:*

"(1) Ordinary dividends, regardless of the time when the surplus out of which they are payable was accumulated, should be paid to the life beneficiary of the trust. (2) Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they intrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust, or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and

the life beneficiary in such a way as to preserve the integrity of the trust fund."

This rule was discussed and applied in *Bourne v. Bourne,* 240 N. Y. 172, 148 N. E. 180.

We are not concerned here with accretions to capital, with the effect of stock dividends, or questions of a similar character. It is apparent from a consideration of the cases that the apportionment of an extraordinary dividend must be made as of the time it is declared. A life tenant cannot appropriate an extraordinary dividend, part of which is drawn from the corpus of the estate, upon the chance that the corpus may be thereafter restored out of future earnings.

Applying the principles laid down in the cases referred to to the facts in this case, we have the following situation: the value of the bank stock at the time of the death of the testator was $4,884.70, of which $3,000 was capital and $1,884.70 accumulated earnings. On June 14, 1920, the book value of the bank stock was $6,611.78, of which $3,000 was capital and $3,611.78 accumulated earnings. On that day a dividend of $3,360 was declared payable out of surplus and accumulated earnings, which left in the hands of the corporation a surplus and accumulated earnings of $251.78. By such distribution the accumulated earnings and surplus of $1,884.70 had been diminished by the difference between these two sums, or by the amount of $1,632.92, which amount belonged to the remaindermen and for which the life beneficiary should be required to account. She is not chargeable with interest because, such sum being a part of the corpus of the trust, she is entitled to the income thereof. Nor is she entitled to have the amount reduced by any part of the amount paid in by the new stockholders in excess of the par value of the stock. If the new stockholders received an equivalent for the purchase price of the stock, they bought a one-half interest in the good will or going value of the bank's business for the sum of $15,000. The amount paid

in to the bank's treasury on that account, however, did not to any extent represent earnings of the corporation. The good will appertained to the ownership of the stock; at least the amount realized from the sale of it was not income in any proper sense of the term.

With reference to the security company, the book value of the stock as of the date of the testator's death was $1,363.45, of which $1,000 was capital and $363.45 surplus and accumulated earnings. At the time of the declaration of the dividend on January 11, 1919, the book value of the stock was $219.93 per share, of which $1,000 was capital and $1,199.34 surplus and accumulated earnings. Out of this amount was paid a dividend of 115 per cent., leaving in the treasury of the company after the completion of the transaction, $49.34, surplus and accumulated earnings. The surplus and accumulated earnings as of the date of the death of the testator was diminished by the difference between this sum and $363.45, or $314.11, which belonged to the corpus of the trust estate and for which the life beneficiary should account. The life beneficiary is not chargeable with interest for the reasons stated. The life beneficiary was therefore indebted to the trust fund in the sum of $1,947.03. The trial court found that the life beneficiary was entitled to an offset of $271.30, leaving a net balance due the trust estate from the life beneficiary, Emily T. Dittmer, on the day of her death, January 8, 1927, of $1,675.73, for which amount, with interest from the date of her death to the date of the judgment, January 7, 1928, her estate is chargeable, being the sum of $1,775.73. The court found the amount due to be $1,878. The judgment should be modified by permitting a recovery in favor of the estate of F. R. Dittmer against the estate of Emily T. Dittmer in the sum of $1,775.73, and as so modified the judgment should be affirmed, appellants to recover their costs in this court.

*By the Court.*—It is so ordered.