### In re BLAKENEY.

(*Surrogate's Court, Rockland County.* February, 1889.)

EXECUTORS AND ADMINISTRATORS—SETTLEMENT AND ACCOUNTING—COMMISSIONS.

　　To entitle each co-executor to full commissions, under Code Civil Proc. N. Y. § 2736, providing that where the value of decedent's personal estate amounts to or exceeds $100,000 over all his debts, each executor or administrator is entitled to the full compensation allowed a sole executor or administrator, it is sufficient if the value of such estate amounts to the requisite sum at the time of the executors' accounting, though it fell short of that amount when the inventory was taken.

Proceedings for an accounting by David W. Kipp and another, executors of Hannah M. Blakeney, deceased.

*A. & A. X. Fallon,* for petitioners.　*Wm. E. Gowdey,* for next of kin.

WEIANT, S.　The deceased testatrix died December 12, 1886. Letters testamentary of her will were granted January 7, 1887. An inventory of her personal estate was filed in this office on March 4, 1887, which disclosed the value of her personal estate to be $96,786.70. This proceeding for an accounting was commenced on June 15, 1888, upon the petition of the executors, and wherein their accounts were filed July 20, 1888, by which it appears that the assets of the estate were then of the value of $101,189.47. The executors claimed double commissions upon this sum, under section 2736 of the Code of Civil Procedure, which provides that "where the value of the personal estate of the decedent amounts to one hundred thousand dollars, or more, over all his debts, each executor or administrator is entitled to the full compensation allowed by law to a sole executor or administrator, unless there are more than three," etc. To the allowance of these double commissions the legatees and next of kin object, claiming that to bring a case within this section it is requisite that the estate, at the time of the death of the decedent, should be of the value of $100,000.

Upon the submission of this question to me for determination I had the impression that such was the meaning of the statute. This impression was based upon my understanding that the authorities had placed that construction upon the section; but, after an examination of the decisions, and on application of the principles which have been enunciated by the courts bearing upon the question of the compensation, the extent thereof, upon what based, and when earned and payable, of executors and administrators, and a consid-

eration of the practical application of the language of the statute under the constructions contended for by the respective parties, I have reached the conclusion that my former impression was erroneous. The statute, by its language, contemplates a determination or finding of the "value" of the estate and of the "debts," in order to ascertain whether or not full commissions are allowable to each executor. Now, when and how does the statute contemplate that this should be done? Is it by the making and filing of the inventory? The statute, if such were the intention, could and would most probably have been made thus specific.

In the administration of estates an inventory is not made in any sense conclusive as to values, and forms no fixed basis for a judicial determination. It is merely a piece of evidence, open to impeachment by an interested party. It is, in a sense, an *ex parte* fixing of values to assets, and made under the supervision of the executor. If that alone is to serve as the basis for a determination of the value of the assets, what is there to prevent the executor, in collusion with the appraisers, from fixing untrue or fictitious values to assets uncertain in value or quite worthless, in order to bring the aggregate high enough to entitle him to the increased compensation? He will be thus made a principal actor in fixing his own compensation. The legislature surely never intended to clothe him with such power. No method of review of these valuations is provided except upon an accounting. It seems to me that, as the statute is silent as to how or when this value of the personal estate should be ascertained, it is fair to assume that these questions are to be determined in the method prescribed for the settlement of estates by accounting, and that a determination of the value of the estate is contemplated in that way. Commissions of an executor cannot be retained, until allowed by judicial determination on an accounting. *Wheelwright* v. *Rhoades*, 11 Abb. N. C. 382, 28 Hun, 57; *Trust Co.* v. *Bixby*, 2 Dem. Sur. 494; *Freeman* v *Freeman*, 4 Redf. Sur. 211. Not only the allowance of commissions, but the amount thereof, is then fixed, and this involves the valuation of the assets or estate. The value must be judicially determined, and this can and should be done only on an accounting, to which all interested persons are parties. Again, the amount of the debts must be determined. As to how and where it shall be done, the statute is also silent. The time and method of ascertaining the debts in the administration of an estate, and the settlement thereof, is prescribed by statute. As no method is prescribed for ascertaining the amount of the debts, in order to decide the question of allowance of additional commissions, it is reasonable to suppose that they are to be ascertained in the usual method provided by the statutes regulating the administration of estates. Now, if the "value" of the estate and the amount of the "debts" of the decedent are to be determined by the usual methods, and upon an accounting, then it seems to me that the "value," as there and then found, is the value that is to be taken as the basis from which to adjudge whether or not double commissions are allowable.

It may be urged, for the purpose of the determination of the right to the additional commissions, that the accounting may relate back to the time of the death of the decedent. But this would thus involve a double examination,—one to ascertain the value at the time of the decedent's death, and another for the purpose of fixing the value of the assets for which the executor or administrator is accountable in his administration. This would cause an additional expense frequently, and generally amount to more than the commissions. Again, this double examination and valuation would lead to confusion. Assets fluctuate in value. A bond and mortgage worth its face at the time of the death of the decedent may, before it could be converted into cash, greatly depreciate. Stocks and bonds may increase or decrease materially in value,—may, indeed, become worthless. In the instances where the assets had decreased, if the value at the time of the death of the decedent

were to prevail, then the executor or administrator claiming double commissions would, contrary to the prevailing rule, not only get commissions on depreciated or worthless assets at their then full value, but also secure double commissions upon such. These, among other circumstances and considerations, have led me to the conclusion that the only construction of this statute that will lead to an orderly, systematic, and uniform determination of the value of the estate over the debts, is to adopt the value at the time of the accounting as the "value of the personal estate of the decedent." I do not believe that the legislature intended to fix one time at which the value should be determined for the purpose of double commissions, and another for the purpose of single commissions, which would be the case if the contention of the legatees herein should prevail against the conclusion I have adopted.

It may be urged that the executors and administrators may be tempted to delay accounting for the purpose of having the estate increase, or otherwise reach an aggregate that will come up to the $100,000 limit; but in answer to this it may be said that the executor or administrator cannot thus abuse his trust, if the persons interested in the estate see that he is brought to a proper accounting. But it may be argued with even greater force from the opposite side, that an executor, in fixing the value of the estate as of the time of the death of the decedent, will be tempted to give the assets a fictitious value in making the inventory and otherwise, so as to secure the double commissions. There will be every incentive for him to overvalue assets, and to set down worthless properties at some valuation, and then, upon his accounting, claim loss or deterioration from causes uncontrollable by him, which must lead to more or less contention and litigation.

I am aware that in several cases which the counsel for the next of kin has brought to my attention it has been held that the value of the estate, at the time of the death of the decedent, left to be administered, or which comes to a trustee as a trust fund, is the one by which the question is to° be determined. If it is meant to be held that the increase, in the usual course of administration, as in this one, may not be considered as a part of the estate of a decedent for the purpose of deciding whether or not the value of the estate is sufficient to authorize double commissions, then I do not assent to the correctness of such construction of the statute. But, however the learned judges may have expressed themselves on this point, each case is distinguishable from this upon the facts, and the decision is made to turn upon circumstances other than exist in this case. In *Re Blackwell*, decided by Surrogate WILLET of Queens county, (not reported,) the learned surrogate states that the statute "must mean the *corpus* of the estate received from a testator, not as it may be augmented by rents, profits, and accumulations realized after his death." But he adds that, upon the "scheme of the will and codicil," annual settlements were contemplated, and the executor will not be allowed to increase their compensation by neglecting their duties in that respect, until the aggregate of income shall make it amount to over $100,000. In *Re Slosson*, 2 Dem. Sur. 257, I do not think that the learned surrogate decided the exact question here presented, and certainly not adversely to the claim of the executors. It was held that in a case of testamentary trusteeship the income arising from the trust fund could not be added to the principal to make up the $100,000. In distinguishing that case from *In re Leggatt*, 4 Redf. Sur. 148, the learned surrogate says, at page 260: "It does not appear upon the statement of the facts that the rents so received were regarded strictly as income. * * * The rents in question might very properly have been treated as substantially an accession to the personalty, and as forming, therefore, a part of the principal of the estate, rather than of income collected." Thus, within the views of the surrogate as above expressed, the accrued interest at the time of the accounting, and received by the executors, may be treated as an accession "to the personalty, and as forming, therefore, a part of

the principal of the estate." *Savage* v. *Sherman,* 24 Hun, 307, was a case of trusteeship. The rents and income were accounted for and paid out periodically, and at no one time did the estate amount to $100,000. It was sought to bring all of these several amounts of income into one aggregate with the principal, although the same had been accounted for and paid over, and upon which single commissions had, at each accounting, been retained. There are other distinguishing circumstances in the case, and upon which the decision was rested, which show that the exact point here involved was not directly examined and decided. It is said at page 314 that the amounts from time to time "received and disbursed were far below the sum required for the purpose of justifying additional commissions, and those only could be charged upon them which were legally apportioned to the amounts at the time collected and disbursed."

I think that the following authorities sustain the construction of the statute I have adopted: *In re Leggatt,* 4 Redf. Sur. 148; *In re Mason,* 98 N. Y. 527; *Smith* v. *Buchanan,* 5 Dem. Sur. 169. In the Daily Register, of the date of September 18, 1888, there appears an article[1] upon the question of the proper

---

[1] MATTER OF BLAKENEY.

Some difference of opinion seems to exist as to the right of several co-executors to claim full commissions for each under the statute (Code Civil Proc., § 2736) providing that, "where the value of the personal estate of the decedent amounts to $100,000 or more over all his debts," such full commissions shall be allowed, unless there are more than three, etc. The question is whether the right to full commissions is to be determined by reference to the inventory valuation, minus the debts and exclusive of income, etc., or whether income and proceeds of real estate can be included in ascertaining what is the aggregate personalty.

In determining this question it is to be observed that there may be a distinction between the amounts on which commissions are to be computed, and those the aggregate of which confer the right to full commissions. There is no doubt that commissions, single or double, are to be computed on income as well as principal, and on proceeds of real estate as well as on personal estate. But this does not necessarily determine the question whether, in judging whether the amount of the personal estate, after deducting debts, exceeds $100,000, we are to include income or proceeds of realty.

Surrogate WOODS, of Albany, in a well-considered opinion in Smith v. Buchanan, 5 Dem. 169, in which he reviewed the previous decisions, held that the proceeds of real estate equitably converted by the will were to be regarded as personal estate for this purpose. In the case of The Leggett Estate, (4 Redf. 148,) before Surrogate CALVIN, where the personal estate was less than $100,000, but the rents of real estate collected and paid out by the executors under the will amounted to much more than $100,000, it was held, upon an accounting which embraced both classes of assets, that the executors were entitled, upon a liberal construction of the statute, to full commissions, as being a case where within the equity of the statute the personal estate of the decedent exceeded $100,000. There can probably be no doubt that in the intent of the draughtsman of the statute the words "personal estate" were inserted merely because it is ordinarily only the personal estate with which executors have to do. Moreover, if it be held that the statute only applies where movable property belonging to the decedent in his lifetime and left by him at death exceeded the limit, the right of testamentary trustees, who are very commonly charged with the care of real property, would be absurdly subjected to the same restriction by reason of section 2811, which makes the clause as to executors control the right of several testamentary trustees to full commissions. There is much force in the views presented by the court of appeals in deciding the right of executors and trustees annually accounting to charge 5 per cent. on the first thousand dollars of income accounted for, (Matter of Mason, 98 N. Y. 527,) and it appears to us that the same reasoning fully supports the doctrine of Smith v. Buchanan and The Estate of Leggett, and leads to the conclusion that, although executors as such may not be entitled to charge commissions on the value of real estate of which they have charge, all the property of the estate which comes to their hands in money and is paid out by them, as well as all personalty upon the inventory, is to be regarded, when presented upon one accounting, as the basis for determining whether several executors are entitled to full commissions. The justice of such a rule as this seems to be made clear by the cases cited. The only mischief which it might engender is that executors might, in a rare case, be tempted to delay accounting, or to misconstrue their powers, for the purpose of reaching an aggregate which will exceed the limit; but the same discernment of the court which could perceive such a tendency could preclude it from having effect by taking the account with a rest, if even such a formality were necessary. So far as public policy is concerned, we believe that all experience suggests that the statute fixing the compensation of executors, guardians, and trustees should be liberally interpreted, while the rules imposing their duty and liability should be strictly enforced.

construction of this section of the Code, reviewing the authorities, and the conclusion there reached is similar to the one at which I have here arrived. The conclusion there reached is expressed as follows: "That all the property of the estate that comes to their hands in money, and is paid out by them, as well as all personalty upon the inventory, is to be regarded, when presented upon an accounting, as the basis for determining whether several executors are entitled to full commissions." This expresses my view of the statute; and the increase which comes to the estate in the usual course of administration, together with the principal of the estate at the time of this accounting, being of an aggregate of $100,000 over all debts of the decedent, each executor is entitled to full commissions.