## In the Matter of the Estate of John H. Mohr, Deceased.

Surrogate's Court, New York County, April 22, 1938.

*Cadwalader, Wickersham & Taft* [*Richard N. Crockett* of counsel], for the petitioners.

Delehanty, S. An intermediate accounting is here made by a surviving trustee and by the representatives of a deceased trustee. The latter seek in behalf of their testator the allowance to his estate of a full commission.

The deceased trustee was appointed on February 29, 1916, at a time when the principal value of the trust amounted to $92,913.71. He died on April 14, 1936. In the twenty years intervening between appointment and death the only realized increases of capital value amounted to $2,191.91, as shown in Schedule A-1 of the account. Offsetting this increase in part is a capital loss of $473.75, set forth in Schedule B of the account. The actually realized net increase of capital over the opening capital value amounts, therefore, to $1,718.16. The account sets out the market value on April 14, 1936, of undisposed of securities. The representatives of the deceased trustee assert on the basis of such values that at his death the principal value upon which commissions are allowable to him amounted to $101,703.84.

The question presented here is whether a trustee who takes office when the capital value of the trust is less than $100,000 is

entitled as of right to a full commission because of unrealized increases in security values held in capital account. The further question is presented here whether the court should exercise discretion in favor of a deceased trustee's estate and allow commissions on a value fixed by appraisal and not by liquidation of the securities in the trust.

It is immediately apparent that an allowance of commissions on the basis here contended for might seriously prejudice estates. It happens in this case that the intermediate account is caused by the death of one of the trustees. Since trustees may account annually if they choose and since they are not held to an anniversary date but may select any date they choose so long as it is at least twelve months after the date of their next prior account, it is obvious that unless the court fixes a rule to the contrary trustees may speculate on their commissions by watching the course of the security markets and by timing their accountings according to the course of security values. When trustees qualify in a trust administration where the capital value is less than but close to $100,000, the prospect of such speculations (unless barred by court ruling) would be substantial.

Here the service of the trustee terminated by his death. His death coincided with what might be called the 1936 boom. The decree will be made in the 1938 depression. Whether that depression has already depreciated the securities so that the trust capital is once more below $100,000 does not appear from the record. Thus the question whether the trust estate is to be burdened with double commissions may depend upon accident or design fixing the date for accounting or for decree.

The need for a definite rule is obvious. The only rule that can work with fairness is one which denies commissions on an intermediate account so far as they are claimed on unrealized increases in capital assets. In times of violent fluctuations in security values and in times when security values are affected by fundamental economic and governmental trends the changes in capital value of a trust below or above $100,000 are not attributable to the act of the fiduciary, but are governed by forces over which he has no control. In individual cases it may be claimed that special skill or luck enabled some individual fiduciary to guide the course of a trust estate to a profitable result despite such shifts in values. In the average case, however, the individual trustee can do no more than go with the tide.

A scrutiny of the cases dealing with the time as of which and the basis of value upon which commissions are to be computed discloses that they are in irreconcilable conflict and that in the authorities

principles of decision are assumed to exist which are contradictory of other principles also assumed to exist. (As to the basis of commissions: *Phœnix* v. *Livingston*, 101 N. Y. 451, 456; *McAlpine* v. *Potter*, 126 id. 285; *Linsly* v. *Bogert*, 152 id. 646; *Matter of Johnson*, 57 App. Div. 494; affd., 170 N. Y. 139; *Robertson* v. *DeBrulatour*, 111 App. Div. 882, 901; affd., 188 N. Y. 301, 315, 317; *Olcott* v. *Baldwin*, 190 id. 99, 107; *Matter of Curtiss*, 9 App. Div. 285; *Matter of Todd*, 64 id. 435, 436; *Matter of Whipple*, 81 id. 589, 590; *Chisolm* v. *Hamersley*, 114 id. 565; *Matter of Freel*, 49 Misc. 386; *Matter of Silliman*, 67 id. 27, 29. As to time of valuation: *Matter of Richardson*, 250 App. Div. 199, 200; *Lewis* v. *Bowers*, 19 Fed. Supp. 745, 746; *Rowland* v. *Morgan*, 3 Dem. 289, 293; *Matter of Blakeney*, 23 Abb. N. C. 32; *Matter of Potter*, 106 Misc. 113; *Matter of Walker*, 138 id. 879; *Matter of Hawley*, 142 id. 396, 397; *Matter of Griffith*, 151 id. 697; *Matter of Corning*, 160 id. 434; *Matter of Nash*, Id. 642; *Matter of McGurk*, 175 N. Y. Supp. 597 [not otherwise reported]; *Matter of Gimbel*, N. Y. L. J. Jan. 9, 1932, p. 157; *Matter of Wallace*, Id. Aug. 10, 1937, p. 360; *Matter of Whalen*, Id. Aug. 27, 1937, p. 508; *Matter of Cheever*, Id. Sept. 10, 1937, p. 624; *Matter of MacIntyre*, 164 Misc. 895; *Matter of Blauner*, N. Y. L. J. Jan. 20, 1938, p. 313; 110 A. L. R. 994.) The history of the statutes regulating commissions adds in some degree to the confusion when related to the dates of the issues arising in the decided cases. (See R. S. [1829] pt. 2, chap. 6, tit. 3, § 58 and pt. 2, chap. 8, tit. 3, § 22; Laws of 1863, chap. 362; Laws of 1866, chap. 115; Code Civ. Proc. §§ 2736, 2811, 2850, in effect in 1881; Laws of 1881, chap. 535; Laws of 1885, chap. 518; Laws of 1893, chap. 686; Laws of 1904, chap. 755; Laws of 1914, chap. 443; Laws of 1915, chap. 631; Laws of 1916, chap. 596; Laws of 1919, chap. 279; Laws of 1921, chap. 440; Laws of 1923, chap. 649; Laws of 1934, chap. 892; Laws of 1936, chap. 202; Civ. Prac. Act, § 1548, and Surr. Ct. Act, § 285.)

The decision here made is limited to the particular fact situation now presented. In this situation it is held that the true rule permits the use of increases in capital value as a base for commissions only when such increases are actually realized in cash or when the subject-matter is actually delivered out of the trust estate in partial or complete distribution of it. The only subject-matter here considered is the question whether the deceased trustee shall be compensated and, if so, in what degree. No ruling here made is designed to constitute any expression respecting the rights of the successor trustee.

Brief comment only need be made on the cases cited by the representatives of the deceased trustee. *Matter of Blakeney (supra)*

dealt with a final accounting, and so is not in point here. In *Matter of Jones* (136 Misc. 122) the opinion seems to deny commissions entirely on the real estate in respect of which the opinion speaks of increased value. Nothing in the opinion indicates that the question here presented was actually litigated. That the writer of the opinion there did not intend to rule in favor of the contention here made is evident by his later ruling in *Matter of Cheever* (N. Y. L. J. Sept. 10, 1937, p. 624), where the precise question here presented was decided adversely to the contention of the representatives of the deceased trustee. *Matter of Walker (supra)* also is express authority against the contention here made in the deceased trustee's behalf.

The effort here made to fix a basis for double commissions because a stock-market boom brought the capital of the estate temporarily over the $100,000 figure makes further comment necessary. The confusion in the cases may be urged hereafter as reason to adopt a rule asserted to be found in the passing of accounts where the issue was never raised or litigated by the parties. In *Matter of Swartz* (162 Misc. 46) there was fastened upon trust administrations where real property was owned in the *individual* name of a deceased an unbearable burden of commissions because of the asserted existence of a State-wide 100-year practice concerning which the distinguished writer of that opinion could have known only by hearsay. Acquainted at first hand as that writer was with only a part of the work in a single one of the sixty-two counties of the State, and functioning as he did as one only of a group of more than 100 judges passing on trust accounts, and occupying as he had with high distinction a judicial office for less than a score of years, it becomes quite apparent upon what a slender basis there was found to exist the " practice " relied upon by the Court of Appeals in *Matter of Schinasi* (277 N. Y. 252). In the record of the latter case (and, indeed, in *Matter of Swartz*) there was neither proof of the practice nor any opportunity to litigate it. Since it is apparent that corporate and individual fiduciaries alike are motivated by an understandable commercial desire for profit (witness the five *amici curiæ* — Bank of New York and Trust Company, Central Hanover Bank and Trust Company, Chase National Bank, City Bank Farmers Trust Company and Irving Trust Company — who, with an individual trustee aided the accounting corporate fiduciary, Chemical Bank and Trust Company, in establishing the *Swartz-Schinasi* rule), there is danger lest another " practice " may be invoked at some future date to give trustees double and triple commissions on the evanescent " values " such as the security market exhibited in the dizzy decade

ending in 1929 or in the period beginning in the fall of 1937. If such a " practice " is hereafter alleged there is some value in the first hand (not hearsay) statement of a judicial officer that at least in a substantial fraction of the work of the Surrogate's Court in New York county since January, 1933, there has never been recognized either by hearsay or otherwise any practice to burden estates by double commissions on so tenuous a basis as is presented when a temporary enhancement of security values actually unrealized either by cash or by delivery in kind has increased the nominal value of the trust estate above the $100,000 level.

The same result must be reached if the matter is dealt with as one of discretion. In *Matter of Bushe* (227 N. Y. 85) the Court of Appeals established the rule beyond further cavil that in the case of a deceased trustee the surrogate has discretion in fixing the allowance for service rendered except that the allowance may never exceed statutory percentage. In *Matter of Barker* (230 N. Y. 364, 371) the court reiterated that there was no absolute right to commissions if an executor or trustee died before completion of his duties. Exercising the discretion vested in this court in a situation such as this the court rejects the unrealized increases of capital here claimed as a basis to the fixing of the compensation of the deceased trustee for the service rendered by him prior to his death. Certainly it would be an abuse of discretion for the court to grant commissions to the estate of a deceased trustee on an assumed value existent at the closing date of the accounting period but which may have wholly disappeared by the time the estate is wound up.

The compensation of the deceased trustee will be fixed only on the basis of an estate of less than $100,000. The total compensation of the deceased trustee for his entire services in the estate is fixed at a sum equal to one-half commissions for receiving the estate at its value when he was appointed plus the net capital increase of $1,718.16. Additional compensation will be allowed on the basis of one-half commissions on the sums actually paid out of principal. Further compensation will be allowed of one-half standard commissions on income received and disbursed.

Submit, on notice, decree settling the account accordingly.