In the Matter of the Accounting of DOROTHY ZUCKERMAN et al., as Committee of the Person and Property of LEAH PEARLSTEIN, an Incompetent Person.

Supreme Court, Special Term, New York County, April 21, 1953.

*Louis Susman* for committee.

*Sydney A. Hellenbrand* for Leah Pearlstein, former incompetent.

*Norman Salit,* original attorney for former incompetent, in person.

HOFSTADTER, J. This is a final accounting of the committee of the person and property of a former incompetent recently adjudged competent. Numerous objections to the account were filed; the parties have, however, by a stipulation providing for the withdrawal of many of these objections, very materially limited the area of controversy. The main problem for determination is the proper method of computing the commissions.

Section 1376 of the Civil Practice Act prescribes that a committee of the property is entitled to the same compensation as an executor or administrator. The compensation of an executor or administrator is governed by section 285 of the Surrogate's Court Act. The committee here was composed of two members, one of whom by the stipulation already mentioned waived commissions. The allowance of multiple commissions depends on whether " the gross value of the principal of the estate or fund accounted for amounts to one hundred thousand dollars or more ". If it does, then full commissions may be awarded the remaining member who has not waived, and in that case the court is not restricted to a single commission of which the member not waiving would receive only one half.

The parties are in disagreement on the question whether the principal of the fund being accounted for exceeds $100,000. This difference arises from the circumstance that, while the fund which originally came into the hands of the committee was less than $100,000, at the close of the accounting period it was more than $100,000. This increase is due in part to realized gains on the sale of securities and of subscription rights received

during the course of the committee's administration and in part to the appreciation in value of the stock of the Lily Tulip Cup Corporation in the hands of the committee at the end of the accounting period.

The capital stock of Pearlstein Realty Co., Inc., a realty corporation whose entire issued capital stock was owned by the former incompetent, requires special treatment and will be discussed later. Its original inventory value is $20,000 and no increase in this value has been established. The $20,000 valuation is, therefore, adopted.

If the capital stock of Pearlstein Realty Co., Inc., is regarded as part of the fund on which commissions may be computed, the value of the fund at the close of the accounting period, the date as of which it is to be delivered to the former incompetent by the committee, is $103,011.11. To this must be added the amount of schedule c, the realized gains just referred to, aggregating $6,159.58. Thus, the fund exceeds $109,000.

Schedule n-1 is a statement of the property held by the committee on November 12, 1952, the closing date of the account, as valued on that date. This value is $103,011.11. Included among the items on schedule n-1 are 940 shares of stock of Lily Tulip Cup Corporation valued at $62,040. This value is now conceded, objection 9(b) thereto having been withdrawn by stipulation. Originally the committee received 737 shares of this stock then worth $29,295.75. During the period of administration the committee sold 200 shares, but also received a stock dividend of 403 shares, so that there were on hand on November 12, 1952, the 940 shares above-mentioned, worth $62,040.

The former incompetent argues that for the purpose of computing the allowable commissions the Lily Tulip Cup Corporation stock may not be valued at its market price on November 12, 1952. This contention must be rejected. It is well settled that realized gains form a proper basis for the computation of commissions and that when realized gains increase a fund, otherwise less than $100,000, to over $100,000, multiple commissions may be awarded (*Matter of Armstrong*, 197 Misc. 1070, and cases there cited). Increases in capital value, though not realized by sale, may also serve as a base for commissions when the property is actually delivered out of the trust estate by way of distribution (*Matter of Mohr*, 167 Misc. 523, 525). The reason for this seeming departure from the general rule that an increase in value must be realized before it may support an allowance of commission is obvious. If, instead of distributing in kind, the fiduciary sold the property for its current value at the time

of distribution and paid over the proceeds to the person entitled to the trust principal, these proceeds would, of course, reflect the enhanced value. When delivery in kind is made, it is thus the equivalent of payment of the proceeds of the property at its then current worth. In this case, the former incompetent receives the 940 shares of Lily Tulip Cup Corporation stock as of November 12, 1952, when they were worth $62,040. For all practical purposes and in legal contemplation she will have received $62,040. In this view, the committee will have received and paid out the increase in value of the stock. Since by this increase the gross value of the estate exceeds $100,000, multiple commissions may be allowed. It follows that the nonwaiving member of the committee should receive a full commission and that, in computing the same, the 940 shares of Lily Tulip Cup Corporation stock are to be valued at $62,040.

Another question for decision concerns the capital stock of Pearlstein Realty Co., Inc., the realty corporation already referred to. It is established that since legal title to the realty of an incompetent remains in him and does not pass to his committee, the committee does not receive, distribute or deliver it, and, therefore, is not entitled to commissions on it (*Matter of Merritt*, 278 N. Y. 74). Relying on this rule, the former incompetent asserts that the realty corporation was merely a convenient vehicle for her operation of the real estate to which it held title and that she should herself be regarded as the true owner of the realty. If this contention were upheld, then, in computing commissions, the realty corporation stock would have to be excluded as an asset taken over by the committee. The facts, however, compel the rejection of this view.

Despite her sole ownership of all the capital stock of Pearlstein Realty Co., Inc., the former incompetent conducted it as a true corporation. Indeed, soon after their qualification the committee obtained an order of the court authorizing them to vote the stock in favor of their election as officers and directors, and pursuant to the order they became and acted as officers and directors. In the circumstances, the court is of opinion that the corporate entity must be recognized, at least to the extent of including the capital stock as an asset on which commissions are allowable.

In strict logic, if the Pearlstein Realty Co., Inc., is treated as a distinct entity, the rents collected from its properties should similarly be regarded as having been received by the corporation and not by the committee. Yet, schedule d-1 of the account is a statement of " all income and expenses pertaining to the

operation " of the two properties belonging to the corporation, and in schedule p, containing the computation of commissions, we find the item " D-1 — Rents collected — " with a computation of 5% of the gross rents. No other reference to the rents appears in this commission schedule. In objection 10(f) the former incompetent objected to this item of " Computation of commissions on rent collections " as improper because the committee did not collect the rents and manage the real estate. By the stipulation previously mentioned this objection was withdrawn.

Apparently when schedule p, the commission schedule, was prepared, the committee made no claim to regular commissions on the rents, but only to the 5% allowed by subdivision 9 of section 285 of the Surrogate's Court Act. Literally, too, the withdrawn objection is directed only to this special 5% commission. The briefs before the court, however, make it clear that, in addition to the 5% commission, the committee now claims regular commissions on the rents. In the circumstances, the right of the committee to any commission at all on the rents should be determined on the merits, without regard to the withdrawal of the objection, the more so since the court would in no event be concluded by the action of the parties with respect to the compensation of its own officer.

It is not open to dispute that the individuals composing the committee, either in their capacity as committee or in that of officers of the corporation, did in fact manage the real property owned by the corporation. They received no salary or other compensation from the corporation nor did either the corporation or the estate of the incompetent incur any expense for management. From a realistic point of view, it cannot be gainsaid that the committee performed a genuine service in operating the properties for which, as yet, no compensation has been paid. The committee should receive fair compensation for the service. Reasonable compensation would, in my judgment, be the regular commissions on the rentals and, in addition, the special 5% commission for real estate management. The non-waiving member will receive only one half of this last commission.

The committee should not be denied compensation for the service on the narrow ground that the rents belonged to the corporation, not to the estate of the former incompetent. The plain fact remains that the committee did manage and operate the properties. Section 1376 of the Civil Practice Act permits

just additional compensation when in a special case the committee's services " exceed those of an executor or administrator ". The allowance to the committee herein of commissions on the rents is within the spirit of the foregoing authorization. Commissions on rents have been allowed in the Surrogate's Court in like situations (*Matter of Bernard,* 177 Misc. 712, 715; *Matter of Schlesinger,* 143 Misc. 275). I accordingly allow the nonwaiving member of the committee full regular commissions on the rents and, in addition, one half of the 5% special commission on the gross rents.

The commissions allowed will be computed on the items appearing in the account, after making the corrections indicated in the papers submitted. The account is settled as filed, subject to like correction. The committee will serve and file with the proposed order hereon a new commission schedule computed in accordance with this opinion, to which the former incompetent may reply.

The attorney for the committee requests an allowance for his services covering a period of practically three years; indeed, when the services in this contested accounting are included, as they should be, the period will run beyond three years. The court has examined the schedule of services and has considered the various factors which must be weighed in fixing the compensation of an attorney. It has also given earnest thought to the objections made by the former incompetent. The court has likewise taken into account the fact that the services in relation to the Rogers estate were largely supervisory, since another attorney continued in active charge of these matters under his retainer. Weighing all the foregoing, the court believes that fair compensation to the attorney for the committee is $8,000, which sum is hereby allowed to him. This allowance covers all further services to be rendered down to and including the entry of the final order herein, and is also inclusive of disbursements. The certified public accountant is allowed $75 as requested. The special guardian on the intermediate accounting is allowed $600.

There is further before the court the request for compensation of an attorney for his services to the former incompetent in resisting the original application for the adjudication of incompetency. At the time of the adjudication the court deleted an allowance of $50 previously made to this attorney, without prejudice to any relief " by way of a plenary objection ". The former incompetent contends that under the foregoing decision

the sole remedy available to this attorney is by plenary action. I question whether the decision should be construed so literally. At that time, the court could hardly have had in view the comparatively early restoration of the incompetent to competency and the resultant final accounting of the committee which is here in progress.

There is, however, one serious obstacle to entertaining this attorney's request for an allowance in the present accounting. The former incompetent is entitled to a jury trial of this claim. If the former incompetent will waive her right to jury trial, then the court will now pass on the application, either on papers or by sending the matter to an official referee for hearing and report with his recommendations. If the matter is to be disposed of solely on papers, further affidavits may be submitted, for the former incompetent has not filed any affidavit addressed to the merits of the application. If, on the other hand, the former incompetent declines to waive a jury trial, the application must be denied, without prejudice to a plenary action. If, in accordance with what has been said, this application for an allowance is to be determined in the present proceeding, its pendency is not to delay the closing of the estate and the entry of a final order on the accounting. Appropriate reservation may be made for further relief at the foot of the order hereon. Settle order.